(Slip Opinion) OCTOBER TERM, 2017 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ARTIS *v.* DISTRICT OF COLUMBIA

### CERTIORARI TO THE DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16–460. Argued November 1, 2017—Decided January 22, 2018

Federal district courts may exercise supplemental jurisdiction over state claims not otherwise within their adjudicatory authority if those claims are "part of the same case or controversy" as the federal claims the plaintiff asserts. 28 U. S. C. §1367(a). When a district court dismisses all claims independently qualifying for the exercise of federal jurisdiction, it ordinarily also dismisses all related state claims. See §1367(c)(3). Section 1367(d) provides that the "period of limitations for" refiling in state court a state claim so dismissed "shall be tolled while the claim is pending [in federal court] and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

When petitioner Artis filed a federal-court suit against respondent District of Columbia (District), alleging a federal employment-discrimination claim and three allied claims under D. C. law, nearly two years remained on the applicable statute of limitations for the D. C.-law violations. Two and a half years later, the Federal District Court ruled against Artis on her sole federal claim and dismissed the D. C.-law claims under §1367(c). Fifty-nine days after the dismissal, Artis refiled her state-law claims in the D. C. Superior Court, but that court dismissed them as time barred. The D. C. Court of Appeals affirmed, holding that §1367(d) accorded Artis only a 30-day grace period to refile in state court and rejecting her argument that the word "tolled" in §1367(d) means that the limitations period is suspended during the pendency of the federal suit.

*Held*:

1. Section 1367(d)'s instruction to "toll" a state limitations period means to hold it in abeyance, *i.e.,* to stop the clock. Pp. 7–16.

(a) Statutes that shelter from time bars claims earlier com-

menced in another forum generally employ one of two means. First, the period of limitations may be "tolled," *i.e.,* suspended, while the claim is pending elsewhere; the time clock starts running again when the tolling period ends, picking up where it left off. A legislature may instead elect simply to provide a grace period, permitting the statute of limitations to run while the claim is pending in another forum and averting the risk of a time bar by according the plaintiff a fixed period in which to refile. The District has identified no federal statute in which a grace-period meaning has been ascribed to the word "tolled" or any word similarly rooted. And the one case in which this Court used tolling language to describe a grace period, see *Hardin* v. *Straub*, 490 U. S. 536, is a feather on the scale against the weight of decisions in which "tolling" a statute of limitations signals stopping the clock. Pp. 7–11.

(b) Considering first the ordinary meaning of the statutory language, §1367(d) is phrased as a tolling provision. It suspends the statute of limitations both while the claim is pending in federal court and for 30 days postdismissal. Artis' interpretation is a natural fit with this language. The District, in contrast, reads "tolled" to mean to remove, temporarily, the bar that would ordinarily accompany the expiration of the limitations period. But the District offers no reason to home in only on the word "tolled" itself and ignore information about the verb's ordinary meaning gained from its grammatical object, "period of limitations." That object sheds light on what it means to "be tolled." The District's reading also tenders a strained interpretation of the phrase "period of limitations"; makes the first portion of the tolling period, the duration of the claim's pendency in federal court, superfluous; and could yield an absurdity, permitting a plaintiff to refile in state court even if the limitations period on her claim had expired before she filed in federal court. Pp. 11–13.

(c) The D. C. Court of Appeals erred in concluding that Congress adopted an American Law Institute (ALI) recommendation to allow refiling in state court only for 30 days after a dismissal. The ALI provision, like §1367(d), established a 30-day federal floor on the time allowed for refiling, but it did not provide for tolling "while the [state] claim is pending" in federal court. Pp. 13–14.

(d) The 30-day provision casts no large shadow on Artis' stop-the-clock interpretation. The provision accounts for cases in which a plaintiff commenced a federal action close to the expiration date of the relevant state statute of limitations, by giving such a plaintiff breathing space to refile in state court. Adding a brief span of days to the tolling period is not unusual in stop-the-clock statutes. See, *e.g.,* 46 U. S. C. §53911. Section 1367(d)'s proviso "unless State law provides for a longer tolling period" could similarly aid a plaintiff who

filed in federal court just short of the expiration of the state limitations period. Pp. 14–16.

2. The stop-the-clock interpretation of §1367(d) does not present a serious constitutional problem. In *Jinks* v. *Richland County*, 538 U. S. 456, the Court rejected an argument that §1367(d) impermissibly exceeds Congress' authority under the Necessary and Proper Clause. *Id.,* at 464–465. The District contends that a stop-the-clock prescription serves "no federal purpose" that could not be served by a grace-period prescription. But both devices are standard, off-the-shelf means of accounting for the fact that a claim was timely pressed in another forum. Requiring Congress to choose one over the other would impose a tighter constraint on Congress' discretion than this Court has countenanced. A concern that a stop-the-clock prescription entails a greater imposition on the States than a grace-period prescription may also be more theoretical than real. Finally, a stop-the-clock rule like §1367(d) is suited to the primary purposes of limitations statutes: "'preventing surprises'" to defendants and "'barring a plaintiff who has slept on his rights.'" *American Pipe & Constr. Co.* v. *Utah*, 414 U. S. 538, 554. Pp. 16–19.

135 A. 3d 334, reversed and remanded.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and BREYER, SOTOMAYOR, and KAGAN, JJ., joined. GORSUCH, J., filed a dissenting opinion, in which KENNEDY, THOMAS, and ALITO, JJ., joined.

NOTICE:  This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports.  Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 16–460

STEPHANIE C. ARTIS, PETITIONER *v.* DISTRICT OF
COLUMBIA

ON WRIT OF CERTIORARI TO THE DISTRICT OF COLUMBIA
COURT OF APPEALS

[January 22, 2018]

JUSTICE GINSBURG delivered the opinion of the Court.

The Supplemental Jurisdiction statute, 28 U. S. C. §1367, enables federal district courts to entertain claims not otherwise within their adjudicatory authority when those claims "are so related to claims . . . within [federal-court competence] that they form part of the same case or controversy."  §1367(a).  Included within this supplemental jurisdiction are state claims brought along with federal claims arising from the same episode.  When district courts dismiss all claims independently qualifying for the exercise of federal jurisdiction, they ordinarily dismiss as well all related state claims.  See §1367(c)(3).  A district court may also dismiss the related state claims if there is a good reason to decline jurisdiction.  See §1367(c)(1), (2), and (4).  This case concerns the time within which state claims so dismissed may be refiled in state court.

Section 1367(d), addressing that issue, provides:

"The period of limitations for any [state] claim [joined with a claim within federal-court competence] shall be tolled while the claim is pending [in federal court] and for a period of 30 days after it is dismissed unless

State law provides for a longer tolling period."

The question presented: Does the word "tolled," as used in §1367(d), mean the state limitations period is suspended during the pendency of the federal suit; or does "tolled" mean that, although the state limitations period continues to run, a plaintiff is accorded a grace period of 30 days to refile in state court post dismissal of the federal case? Petitioner urges the first, or stop-the-clock, reading. Respondent urges, and the District of Columbia Court of Appeals adopted, the second, or grace-period, reading.

In the case before us, plaintiff-petitioner Stephanie C. Artis refiled her state-law claims in state court 59 days after dismissal of her federal suit.[1] Reading §1367(d) as a grace-period prescription, her complaint would be time barred. Reading §1367(d) as stopping the limitations clock during the pendency of the federal-court suit, her complaint would be timely. We hold that §1367(d)'s instruction to "toll" a state limitations period means to hold it in abeyance, *i.e.,* to stop the clock. Because the D. C. Court of Appeals held that §1367(d) did not stop the D. C. Code's limitations clock, but merely provided a 30-day grace period for refiling in D. C. Superior Court, we reverse the D. C. Court of Appeals' judgment.

# I
## A

Section 1367, which Congress added to Title 28 as part of the Judicial Improvements Act of 1990, 104 Stat. 5089, codifies the court-developed pendent and ancillary juris-

---

[1] The nonfederal claims Artis asserted arose under the D. C. Code and common law; on dismissal of her federal-court suit, she refiled those claims in D. C. Superior Court. For the purpose at hand, District of Columbia law and courts are treated as state law and courts. See 28 U. S. C. §1367(e) ("As used in this section, the term 'State' includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.").

diction doctrines under the label "supplemental jurisdiction." See *Exxon Mobil Corp.* v. *Allapattah Services, Inc.*, 545 U. S. 546, 552–558 (2005) (describing the development of pendent and ancillary jurisdiction doctrines and subsequent enactment of §1367); *id.,* at 579–584 (GINSBURG, J., dissenting) (same). The House Report accompanying the Act explains that Congress sought to clarify the scope of federal courts' authority to hear claims within their supplemental jurisdiction, appreciating that "[s]upplemental jurisdiction has enabled federal courts and litigants to . . . deal economically—in single rather than multiple litigation—with related matters." H. R. Rep. No. 101–734, p. 28 (1990) (H. R. Rep.). Section 1367(a) provides, in relevant part, that a district court with original jurisdiction over a claim "shall have supplemental jurisdiction over all other claims . . . form[ing] part of the same case or controversy."

 "[N]ot every claim within the same 'case or controversy' as the claim within the federal courts' original jurisdiction will be decided by the federal court." *Jinks* v. *Richland County*, 538 U. S. 456, 459 (2003). Section 1367(c) states:

> "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
> "(1) the claim raises a novel or complex issue of State law,
> "(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> "(3) the district court has dismissed all claims over which it has original jurisdiction, or
> "(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

If a district court declines to exercise jurisdiction over a claim asserted under §1367(a) and the plaintiff wishes to continue pursuing it, she must refile the claim in state

court. If the state court would hold the claim time barred, however, then, absent a curative provision, the district court's dismissal of the state-law claim without prejudice would be tantamount to a dismissal with prejudice. See, *e.g., Carnegie-Mellon Univ.* v. *Cohill*, 484 U. S. 343, 352 (1988) (under the doctrine of pendent jurisdiction, if the statute of limitations on state-law claims expires before the federal court "relinquish[es] jurisdiction[,] . . . a dismissal will foreclose the plaintiff from litigating his claims"). To prevent that result, §1367(d) supplies "a tolling rule that must be applied by state courts." *Jinks*, 538 U. S., at 459. Section 1367(d) provides:

> "The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

This case requires us to determine how §1367(d)'s tolling rule operates.

B

Petitioner Artis worked as a health inspector for respondent, the District of Columbia (the "District"). In November 2010, Artis was told she would lose her job. Thirteen months later, Artis sued the District in the United States District Court for the District of Columbia, alleging that she had suffered employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U. S. C. §2000e *et seq.* She also asserted three allied claims under D. C. law: retaliation in violation of the District of Columbia Whistleblower Act, D. C. Code §1–615.54 (2001); termination in violation of the District of Columbia False Claims Act, §2–381.04; and

wrongful termination against public policy, a common-law claim. Artis alleged that she had been subjected to gender discrimination by her supervisor, and thereafter encountered retaliation for reporting the supervisor's unlawful activities. See *Artis* v. *District of Columbia,* 51 F. Supp. 3d 135, 137 (2014).

On June 27, 2014, the District Court granted the District's motion for summary judgment on the Title VII claim. Having dismissed Artis' sole federal claim, the District Court, pursuant to §1367(c)(3), declined to exercise supplemental jurisdiction over her remaining state-law claims. "Artis will not be prejudiced," the court noted, "because 28 U. S. C. §1367(d) provides for a tolling of the statute of limitations during the period the case was here and for at least 30 days thereafter." *Id.,* at 142.

Fifty-nine days after the dismissal of her federal action, Artis refiled her state-law claims in the D. C. Superior Court, the appropriate local court. The Superior Court granted the District's motion to dismiss, holding that Artis' claims were time barred, because they were filed 29 days too late. See App. to Pet. for Cert. 14a. When Artis first asserted her state-law claims in the District Court, nearly two years remained on the applicable three-year statute of limitations.[2] But two and a half years passed before the federal court relinquished jurisdiction. Unless

————————

[2]The D. C. False Claims Act and the tort of wrongful termination each have a three-year statute of limitations that started to run on the day Artis lost her job in November 2010. See D. C. Code §2–381.04(c) (2001) (D. C. False Claims Act); *Stephenson* v. *American Dental Assn.,* 789 A. 2d 1248, 1249, 1252 (D. C. 2002) (tort of wrongful termination governed by D. C.'s catchall three-year limitations period and claim accrues on the date when plaintiff has unequivocal notice of termination). Artis' whistleblower claim had a one-year limitations period, which began to accrue when Artis "first bec[a]m[e] aware" that she had been terminated for reporting her supervisor's misconduct. D. C. Code §1–615.54(a)(2). The parties dispute the date the whistleblower claim accrued. See Brief for Petitioner 10, n. 2; Brief for Respondent 8, n. 2.

§1367(d) paused the limitations clock during that time, Artis would have had only 30 days to refile.  The Superior Court rejected Artis' stop-the-clock reading of §1367(d), reasoning that Artis could have protected her state-law claims by "pursuing [them] in a state court while the federal court proceeding [was] pending." *Ibid.*  In tension with that explanation, the court noted that duplicative filings in federal and state court are "generally disfavored . . . as 'wasteful' and . . . 'against [the interests of] judicial efficiency.'" *Id.,* at 14a, n. 1 (quoting *Stevens* v. *Arco Management of Wash. D.C., Inc.*, 751 A. 2d 995, 1002 (D. C. 2000); alteration in original).

The D. C. Court of Appeals affirmed.  That court began by observing that two "competing approaches [to §1367(d)] have evolved nationally": the stop-the-clock reading and the grace-period reading.  135 A. 3d 334, 337 (2016).[3] Without further comment on §1367(d)'s text, the D. C. Court of Appeals turned to the legislative history.  Section 1367(d)'s purpose, the court noted, was "to prevent the loss of claims to statutes of limitations where state law might fail to toll the running of the period of limitations while a supplemental claim was pending in federal court." *Id.,* at 338 (quoting H. R. Rep., at 30; internal quotation marks omitted).  Following the lead of the California Supreme Court, the D. C. Court of Appeals determined that Con-

—————

[3] The high courts of Maryland and Minnesota, along with the Sixth Circuit, have held that §1367(d)'s tolling rule pauses the clock on the statute of limitations until 30 days after the state-law claim is dismissed.  See *In re Vertrue Inc. Marketing & Sales Practices Litigation*, 719 F. 3d 474, 481 (CA6 2013); *Goodman* v. *Best Buy, Inc.*, 777 N. W. 2d 755, 759–760 (Minn. 2010); *Turner* v. *Kight*, 406 Md. 167, 180–182, 957 A. 2d 984, 992–993 (2008).  In addition to the D. C. Court of Appeals, the high courts of California and the Northern Mariana Islands have held that §1367(d) provides only a 30-day grace period for the refiling of otherwise time-barred claims.  See *Los Angeles* v. *County of Kern*, 59 Cal. 4th 618, 622, 328 P. 3d 56, 58 (2014); *Juan* v. *Commonwealth*, 2001 MP 18, 6 N. Mar. I. 322, 327 (2001).

gress had intended to implement a 1969 recommendation by the American Law Institute (ALI) to allow refiling in state court "within 30 days after dismissal." 135 A. 3d, at 338 (quoting *Los Angeles* v. *County of Kern*, 59 Cal. 4th 618, 629, 328 P. 3d 56, 63 (2014)).

The D. C. Court of Appeals also concluded that the grace-period approach "better accommodates federalism concerns," by trenching significantly less on state statutes of limitations than the stop-the-clock approach. 135 A. 3d, at 338–339. Construing §1367(d) as affording only a 30-day grace period, the court commented, was "consistent with [its] presumption favoring narrow interpretations of federal preemption of state law." *Id.,* at 339.

To resolve the division of opinion among State Supreme Courts on the proper construction of §1367(d), see *supra,* at 6, n. 3, we granted certiorari. 580 U. S. \_\_\_ (2017).

## II
### A

As just indicated, statutes that shelter from time bars claims earlier commenced in another forum generally employ one of two means.

First, the period (or statute) of limitations may be "tolled" while the claim is pending elsewhere.[4] Ordinarily,

---

[4] Among illustrations: 21 U. S. C. §1604 (allowing suits to proceed against certain biomaterial providers and providing that "[a]ny applicable statute of limitations shall toll during the period from the time a claimant files a petition with the Secretary under this paragraph until such time as either (i) the Secretary issues a final decision on the petition, or (ii) the petition is withdrawn," §1604(b)(3)(C)); 28 U. S. C. §1332 (permitting the removal of "mass actions" to federal court and providing that "[t]he limitations periods on any claims asserted in a mass action that is removed to Federal court pursuant to this subsection shall be deemed tolled during the period that the action is pending in Federal court," §1332(d)(11)(D)); 42 U. S. C. §233 (providing a remedy against the United States for certain injuries caused by employees of the Public Health Service, and stating that "[t]he time limit for filing a claim under this subsection . . . shall be tolled during the

"tolled," in the context of a time prescription like §1367(d), means that the limitations period is suspended (stops running) while the claim is *sub judice* elsewhere, then starts running again when the tolling period ends, picking up where it left off. See Black's Law Dictionary 1488 (6th ed. 1990) ("toll," when paired with the grammatical object "statute of limitations," means "to suspend or stop temporarily"). This dictionary definition captures the rule generally applied in federal courts. See, *e.g., Chardon* v. *Fumero Soto*, 462 U. S. 650, 652, n. 1 (1983) (Court's opinion "use[d] the word 'tolling' to mean that, during the relevant period, the statute of limitations ceases to run").[5] Our decisions employ the terms "toll" and "suspend" interchangeably. For example, in *American Pipe & Constr. Co.*

———————————

pendency of a[n] [administrative] request for benefits," §233(p)(3) (A)(ii)). See also Wis. Stat. §893.15(3) (2011–2012) ("A Wisconsin law limiting the time for commencement of an action on a Wisconsin cause of action is tolled from the period of commencement of the action in a non-Wisconsin forum until the time of its final disposition in that forum."). The dissent maintains that "stop clock examples [from the U. S. Code] often involve situations where some disability prevents the plaintiff from proceeding to court." *Post,* at 12, n. 7. Plainly, however, the several statutes just set out do not fit that description: They do not involve "disabilities." Instead, like §1367(d), they involve claims earlier commenced in another forum.

[5] As we recognized in *Chardon* v. *Fumero Soto*, 462 U. S. 650 (1983), there may be different ways of "calculating the amount of time available to file suit *after tolling has ended.*" *Id.,* at 652, n. 1 (emphasis added). In addition to the "common-law" stop-the-clock effect, *id.,* at 655, under which the plaintiff must file within the amount of time left in the limitations period, a statute might either provide for the limitations period to be "renewed," so that "the plaintiff has the benefit of a new period as long as the original," or "establish a fixed period such as six months or one year during which the plaintiff may file suit, without regard to the length of the original limitations period or the amount of time left when tolling began." *Id.,* at 652, n. 1. Notably, under each of the "tolling effect[s]" enumerated in *Chardon*, *ibid.,* the word "tolled" means that the progression of the limitations clock is stopped for the duration of "tolling."

v. *Utah*, 414 U. S. 538 (1974), we characterized as a "tolling" prescription a rule "suspend[ing] the applicable statute of limitations," *id.,* at 554; accordingly, we applied the rule to stop the limitations clock, *id.,* at 560–561.[6] We have similarly comprehended what tolling means in decisions on equitable tolling. See, *e.g., CTS Corp.* v. *Waldburger*, 573 U. S. ___, ___ (2014) (slip op., at 7) (describing equitable tolling as "a doctrine that pauses the running of, or 'tolls' a statute of limitations" (some internal quotation marks omitted)); *United States* v. *Ibarra*, 502 U. S. 1, 4, n. 2 (1991) (*per curiam*) ("Principles of equitable tolling usually dictate that when a time bar has been suspended and then begins to run again upon a later event, the time remaining on the clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped.").

In lieu of "tolling" or "suspending" a limitations period by pausing its progression, a legislature might elect simply to provide a grace period. When that mode is adopted, the statute of limitations continues to run while the claim is pending in another forum. But the risk of a time bar is averted by according the plaintiff a fixed period in which to refile. A federal statute of that genre is 28 U. S. C. §2415. That provision prescribes a six-year limitations period for suits seeking money damages from the United States for breach of contract. §2415(a). The statute further provides: "In the event that any action . . . is timely brought and is thereafter dismissed without prejudice, the action may be recommenced within one year after such dismissal, regardless of whether the action would otherwise then be barred by this section." §2415(e).[7] Many

——————

[6] The dissent's notion that federal tolling periods may be understood as grace periods, not stop-the-clock periods, see *post,* at 7–8, is entirely imaginative.

[7] Also illustrative, the Equal Credit Opportunity Act prescribes a five-year limitations period for certain suits. 15 U. S. C. §1691e(f). Where a

States have enacted similar grace-period provisions. See App. to Brief for National Conference of State Legislatures et al. as *Amici Curiae* 1a–25a. For example, Georgia law provides:

> "When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later . . . ." Ga. Code Ann. §9–2–61(a) (2007).

Tellingly, the District has not identified any federal statute in which a grace-period meaning has been ascribed to the word "tolled" or any word similarly rooted. Nor has the dissent, for all its mighty strivings, identified even one federal statute that fits its bill, *i.e.,* a federal statute that says "tolled" but means something other than "suspended," or "paused," or "stopped." From what statutory text, then, does the dissent start? See *post,* at 5.[8]

Turning from statutory texts to judicial decisions, only once did an opinion of this Court employ tolling language to describe a grace period: *Hardin* v. *Straub*, 490 U. S. 536 (1989). In *Hardin*, we held that, in 42 U. S. C. §1983 suits, federal courts should give effect to state statutes

—————

government agency has brought a timely suit, however, an individual may bring an action "not later than one year after the commencement of that proceeding or action." *Ibid.*

[8] Reasons of history, context, and policy, the dissent maintains, would have made it sensible for Congress to have written a grace-period statute. See *post,* at 4–5. But "[t]he controlling principle in this case is the basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written[,] . . . giving each word its ordinary, contemporary, common meaning." *Star Athletica, L. L. C.* v. *Varsity Brands, Inc.*, 580 U. S. ___, ___ (2017) (slip op., at 6) (internal quotation marks omitted).

sheltering claims from time bars during periods of a plaintiff's legal disability. We there characterized a state statute providing a one-year grace period as "tolling" or "suspend[ing]" the limitations period "until one year after the disability has been removed." 490 U. S., at 537. This atypical use of "tolling" or "suspending" to mean something other than stopping the clock on a limitations period is a feather on the scale against the weight of decisions in which "tolling" a statute of limitations signals stopping the clock.

## B

In determining the meaning of a statutory provision, "we look first to its language, giving the words used their ordinary meaning." *Moskal* v. *United States*, 498 U. S. 103, 108 (1990) (citation and internal quotation marks omitted). Section 1367(d) is phrased as a tolling provision. It suspends the statute of limitations for two adjacent time periods: while the claim is pending in federal court and for 30 days postdismissal. Artis urges that the phrase "shall be tolled" in §1367(d) has the same meaning it does in the statutes cited *supra,* at 7, n. 4. That is, the limitations clock stops the day the claim is filed in federal court and, 30 days postdismissal, restarts from the point at which it had stopped.

The District reads "tolled" for §1367(d)'s purposes differently. To "toll," the District urges, means to "remove or take away an effect." Brief for Respondent 12–13. To "toll" a limitations period, then, would mean to "remov[e] the bar that ordinarily would accompany its expiration." *Id.,* at 14.[9] "[T]here is nothing special," the District main-

---

[9] This is indeed a definition sometimes used in reference to a right. See, *e.g., Ricard* v. *Williams*, 7 Wheat. 59, 120 (1822) ("[A]n adverse possession . . . toll[s] the right of entry of the heirs, and, consequently, extinguish[es], by the lapse of time, their right of action for the land."). See also Black's Law Dictionary 1488 (6th ed. 1990) ("toll" can mean

tains, "about tolling limitations periods versus tolling any other fact, right, or consequence." *Id.,* at 13. But the District offers no reason why, in interpreting "tolled" as used in §1367(d), we should home in only on the word itself, ignoring the information about the verb's ordinary meaning gained from its grammatical object. Just as when the object of "tolled" is "bell" or "highway traveler," the object "period of limitations" sheds light on what it means to "be tolled."

The District's reading, largely embraced by the dissent, is problematic for other reasons as well. First, it tenders a strained interpretation of the phrase "period of limitations." In the District's view, "period of limitations" means "the effect of the period of limitations as a time bar." See *id.*, at 18 ("Section 1367(d) . . . provides that 'the period of limitations'—here its effect as a time bar—'shall be [removed or taken away] while the claim is pending [in federal court] and for a period of 30 days after it is dismissed.'" (alterations in original)). Second, the first portion of the tolling period, the duration of the claim's pendency in federal court, becomes superfluous under the District's construction. The "effect" of the limitations period as a time bar, on the District's reading, becomes operative only after the case has been dismissed. That being so, what need would there be to remove anything while the claim is pending in federal court?

Furthermore, the District's reading could yield an ab-

_____

"bar, defeat, or take away; thus, to toll the entry means to deny or take away the right of entry"). The dissent, also relying on this sense of the word "toll," cites *Chardon* as support for the proposition that §1367(d)'s tolling instruction is ambiguous. See *post,* at 3; *supra,* at 8, n. 5. But, importantly, the grace-period statutes noted in *Chardon*, 462 U. S., at 660, n. 13, were precise about their operation. *Chardon* provides no support for the notion that a statute's instruction that a "period of limitations shall be tolled" plausibly could mean that the limitations clock continues to run but its effect as a bar is removed during the tolling. See *post,* at 2–3.

surdity: It could permit a plaintiff to refile in state court even if the limitations period on her claim had expired before she filed in federal court. To avoid that result, the District's proposed construction of "tolled" as "removed" could not mean simply "removed." Instead, "removed" would require qualification to express "removed, unless the period of limitations expired before the claim was filed in federal court." In sum, the District's interpretation maps poorly onto the language of §1367(d), while Artis' interpretation is a natural fit.

C

The D. C. Court of Appeals adopted the District's grace-period construction primarily because it was convinced that in drafting §1367(d), Congress embraced an ALI recommendation. 135 A. 3d, at 338. Two decades before the enactment of §1367(d), the ALI, in its 1969 Study of the Division of Jurisdiction Between State and Federal Courts, did recommend a 30-day grace period for refiling certain claims. The ALI proposed the following statutory language:

> "If any claim in an action timely commenced in a federal court is dismissed for lack of jurisdiction over the subject matter of the claim, a new action on the same claim brought in another court shall not be barred by a statute of limitations that would not have barred the original action had it been commenced in that court, if such new action is brought in a proper court, federal or State, within thirty days after dismissal of the original claim has become final or within such longer period as may be available under applicable State law." ALI, Study of the Division of Jurisdiction Between State and Federal Courts §1386(b), p. 65 (1969) (ALI Study).

Congress, however, did not adopt the ALI's grace-period

formulation. Instead, it ordered tolling of the state limita-
tions period "while the claim is pending" in federal court.
Although the provision the ALI proposed, like §1367(d),
established a 30-day federal floor on the time allowed for
refiling, it did not provide for tolling the period of limita-
tions while a claim is pending.[10] True, the House Report
contained a citation to the ALI Study, but only in refer-
ence to a different provision, 28 U. S. C. §1391 (the general
venue statute). There, Congress noted that its approach
was "taken from the ALI Study." H. R. Rep., at 23. Had
Congress similarly embraced the ALI's grace-period for-
mulation in §1367(d), one might expect the House Report
to have said as much.[11]

D

The District asks us to zero in on §1367(d)'s "express
inclusion" of the "period of 30 days after the claim is dis-
missed" within the tolling period. Brief for Respondent 20
(internal quotation marks omitted). Under Artis' stop-the-

_____

[10] The District emphasizes that the Reporter's note accompanying the
ALI's proposed statute stated: "[A]ny governing statute of limitations is
tolled by the commencement of an action in a federal court, and for at
least thirty days following dismissal . . . in any case in which the
dismissal was for lack of jurisdiction." ALI Study 66. The similarity
between *this* language and §1367(d), the District argues, rebuts any
argument that Congress did not adopt the ALI's recommendation. We
are unpersuaded. The District offers no explanation why, if Congress
wanted to follow the substance of the ALI's grace-period recommenda-
tion, it would neither cite the ALI Study in the legislative history of
§1367(d), see *infra* this page, nor adopt the precise language of either
the proposed statute or the Reporter's note. The ALI Study, moreover,
cautions that the Reporter's notes reflect "the Reporter's work alone,"
not a position taken by the Institute. ALI Study, p. x.

[11] The dissent offers a history lesson on the ancient common-law prin-
ciple of "journey's account," see *post,* at 5–6, and n. 4, but nothing
suggests that the 101st Congress had any such ancient law in mind
when it drafted §1367(d). Cf. *post,* at 9. More likely, Congress was
mindful that "suspension" during the pendency of other litigation is
"the common-law rule." *Chardon*, 462 U. S., at 655.

clock interpretation, the District contends, "the inclusion
of 30 days within the tolling period would be relegated to
insignificance in the mine-run of cases." *Id.*, at 21 (cita-
tion and internal quotation marks omitted).  In §1367(d),
Congress did provide for tolling not only while the claim is
pending in federal court, but also for 30 days thereafter.
Including the 30 days within §1367(d)'s tolling period
accounts for cases in which a federal action is commenced
close to the expiration date of the relevant state statute of
limitations.  In such a case, the added days give the plain-
tiff breathing space to refile in state court.

   Adding a brief span of days to the tolling period is not
unusual in stop-the-clock statutes.   In this respect,
§1367(d) closely resembles 46 U. S. C. §53911, which
provides, in a subsection titled "Tolling of limitations
period," that if a plaintiff submits a claim for war-related
vessel damage to the Secretary of Transportation, "the
running of the limitations period for bringing a civil action
is suspended until the Secretary denies the claim, and for
60 days thereafter."  §53911(d).  Numerous other statutes
similarly append a fixed number of days to an initial
tolling period.  See, *e.g.,* 22 U. S. C. §1631k(c) ("Statutes of
limitations on assessments . . . shall be suspended with
respect to any vested property . . . while vested and for six
months thereafter. . . ."); 26 U. S. C. §6213(f)(1) ("In any
case under title 11 of the United States Code, the running
of the time prescribed by subsection (a) for filing a petition
in the Tax Court with respect to any deficiency shall be
suspended for the period during which the debtor is pro-
hibited by reason of such case from filing a petition in the
Tax Court with respect to such deficiency, and for 60 days
thereafter."); §6503(a)(1) ("The running of the period of
limitations provided in section 6501 or 6502 . . . shall . . .
be suspended for the period during which the Secretary is
prohibited from making the assessment . . . and for 60
days thereafter."); 50 U. S. C. §4000(c) ("The running of a

statute of limitations against the collection of tax deferred under this section . . . shall be suspended for the period of military service of the servicemember and for an additional period of 270 days thereafter."). Thus, the "30 days" provision casts no large shadow on Artis' interpretation.

Section 1367(d)'s proviso, "unless State law provides for a longer tolling period," could similarly aid a plaintiff who filed in federal court just short of the expiration of the state limitations period. She would have the benefit of §1367(d)'s 30-days-to-refile prescription, or such longer time as state law prescribes.[12] It may be that, in most cases, the state-law tolling period will not be longer than §1367(d)'s. But in some cases it undoubtedly will. For example, Indiana permits a plaintiff to refile within three years of dismissal. See Ind. Code §34–11–8–1 (2017). And Louisiana provides that after dismissal the limitations period "runs anew." La. Civ. Code Ann., Arts. 3462, 3466 (West 2007).

## III

Satisfied that Artis' text-based arguments overwhelm the District's, we turn to the District's contention that the stop-the-clock interpretation of §1367(d) raises a significant constitutional question: Does the statute exceed Congress' authority under the Necessary and Proper

---

[12] The dissent, *post,* at 8–9, conjures up absurdities not presented by this case, for the District of Columbia has no law of the kind the dissent describes. All agree that the phrase "unless State law provides for a longer tolling period" leaves room for a more generous state-law regime. The dissent posits a comparison between the duration of the federal suit, plus 30 days, and a state-law grace period. But of course, as the dissent recognizes, *post,* at 9, the more natural comparison is between the amount of time a plaintiff has left to refile, given the benefit of §1367(d)'s tolling rule, and the amount of time she would have to refile under the applicable state law. Should the extraordinary circumstances the dissent envisions in fact exist in a given case, the comparison the dissent makes would be far from inevitable.

Clause, Art. I, §8, cl. 18, because its connection to Congress' enumerated powers is too attenuated or because it is too great an incursion on the States' domain? Brief for Respondent 46–49. To avoid constitutional doubt, the District urges, we should adopt its reading. "[W]here an alternative interpretation of [a] statute is fairly possible," the District reminds, we have construed legislation in a manner that "avoid[s] [serious constitutional] problems" raised by "an otherwise acceptable construction." *INS* v. *St. Cyr*, 533 U. S. 289, 299–300 (2001) (internal quotation marks omitted). But even if we regarded the District's reading of §1367(d) as "fairly possible," our precedent would undermine the proposition that §1367(d) presents a serious constitutional problem. See *Jinks,* 538 U. S., at 461–465.

In *Jinks*, we unanimously rejected an argument that §1367(d) impermissibly exceeds Congress' enumerated powers.[13] Section 1367(d), we held, "is necessary and proper for carrying into execution Congress's power '[t]o constitute Tribunals inferior to the supreme Court,' . . . and to assure that those tribunals may fairly and efficiently exercise '[t]he judicial Power of the United States.'" *Id.,* at 462 (quoting U. S. Const., Art. I, §8, cl. 9, and Art. III, §1).

In two principal ways, we explained, §1367(d) is "conducive to the due administration of justice in federal court." 538 U. S., at 462 (internal quotation marks omitted).

———————

[13] The dissent refers to an "understanding," *post,* at 14, by the Court in *Jinks* v. *Richland County,* 538 U. S. 456 (2003), that §1367(d) accords only a 30-day "window" for refiling in state court. Scattered characterizations in the *Jinks* briefing might be seen as conveying that understanding. See *post,* at 14, n. 9. The opinion itself, however, contains nary a hint of any such understanding. And indeed, one year earlier, we described §1367(d) as having the effect of stopping the clock, *i.e.,* "toll[ing] the state statute of limitations for 30 days in addition to however long the claim had been pending in federal court." *Raygor* v. *Regents of Univ. of Minn.*, 534 U. S. 533, 542 (2002).

First, "it provides an alternative to the unsatisfactory options that federal judges faced when they decided whether to retain jurisdiction over supplemental state-law claims that might be time barred in state court." *Ibid.* Section 1367(d) thus "unquestionably promotes fair and efficient operation of the federal courts." *Id.,* at 463. Second, §1367(d) "eliminates a serious impediment to access to the federal courts on the part of plaintiffs pursuing federal- and state-law claims" arising from the same episode. *Ibid.* With tolling available, a plaintiff disinclined to litigate simultaneously in two forums is no longer impelled to choose between forgoing either her federal claims or her state claims.

Moreover, we were persuaded that §1367(d) was "plainly adapted" to Congress' exercise of its enumerated power: there was no cause to suspect that Congress had enacted §1367(d) as a "'pretext' for 'the accomplishment of objects not entrusted to [it],'"; nor was there reason to believe that the connection between §1367(d) and Congress' authority over the federal courts was too attenuated. *Id.,* at 464 (quoting *McCulloch* v. *Maryland*, 4 Wheat. 316, 423 (1819)).

Our decision in *Jinks* also rejected the argument that §1367(d) was not "proper" because it violates principles of state sovereignty by prescribing a procedural rule for state courts' adjudication of purely state-law claims. 538 U. S., at 464–465. "Assuming [without deciding] that a principled dichotomy can be drawn, for purposes of determining whether an Act of Congress is 'proper,' between federal laws that regulate state-court 'procedure' and laws that change the 'substance' of state-law rights of action," we concluded that the tolling of state limitations periods "falls on the [permissible] 'substantive' side of the line." *Ibid.*

The District's contention that a stop-the-clock prescription serves "no federal purpose" that could not be served by a grace-period prescription is unavailing.   Brief for

Respondent 49. Both devices are standard, off-the-shelf means of accounting for the fact that a claim was timely pressed in another forum. Requiring Congress to choose one over the other would impose a tighter constraint on Congress' discretion than we have ever countenanced.

The concern that a stop-the-clock prescription entails a greater imposition on the States than a grace-period prescription, moreover, may be more theoretical than real. Consider the alternative suggested by the D. C. Superior Court. Plaintiffs situated as Artis was could simply file two actions and ask the state court to hold the suit filed there in abeyance pending disposition of the federal suit. See *supra,* at 6. Were the dissent's position to prevail, cautious plaintiffs would surely take up the D. C. Superior Court's suggestion. How it genuinely advances federalism concerns to drive plaintiffs to resort to wasteful, inefficient duplication to preserve their state-law claims is far from apparent. See, *e.g., Stevens*, 751 A. 2d, at 1002 (it "work[s] against judicial efficiency . . . to compel prudent federal litigants who present state claims to file duplicative and wasteful protective suits in state court").

We do not gainsay that statutes of limitations are "fundamental to a well-ordered judicial system." *Board of Regents of Univ. of State of N. Y.* v. *Tomanio*, 446 U. S. 478, 487 (1980). We note in this regard, however, that a stop-the-clock rule is suited to the primary purposes of limitations statutes: "preventing surprises" to defendants and "barring a plaintiff who has slept on his rights." *American Pipe & Constr. Co.* v. *Utah*, 414 U. S. 538, 554 (1974) (internal quotation marks omitted). Whenever §1367(d) applies, the defendant will have notice of the plaintiff's claims within the state-prescribed limitations period. Likewise, the plaintiff will not have slept on her rights. She will have timely asserted those rights, endeavoring to pursue them in one litigation.

\*    \*    \*

For the reasons stated, we resist unsettling the usual understanding of the word "tolled" as it appears in legislative time prescriptions and court decisions thereon. The judgment of the D. C. Court of Appeals is therefore reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–460

_____

## STEPHANIE C. ARTIS, PETITIONER *v.* DISTRICT OF COLUMBIA

ON WRIT OF CERTIORARI TO THE DISTRICT OF COLUMBIA
COURT OF APPEALS

[January 22, 2018]

JUSTICE GORSUCH, with whom JUSTICE KENNEDY, JUSTICE THOMAS, and JUSTICE ALITO join, dissenting.

Chesterton reminds us not to clear away a fence just because we cannot see its point. Even if a fence doesn't seem to have a reason, sometimes all that means is we need to look more carefully for the reason it was built in the first place.

The same might be said about the law before us. Section 1367(d) provides that "[t]he period of limitations . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U. S. C. §1367(d). Grown from a rich common law and state statutory tradition, this provision serves a modest role. If a federal court dismisses a party's state law claim without ruling on its merits, the law ensures the party will enjoy whatever time state law allows, or at least 30 days, to refile the claim in state court.

Today the Court clears away this traditional rule because it overlooks the original reasons for it. For the first time in the statute's history the Court now reads the law to guarantee parties not 30 days or whatever state law permits but months or years more to refile their dismissed state law claims in state court. Rather than reading the statute as generally deferring to state law judgments

about the appropriate lifespan of state law claims brought in state courts, the Court now reads the statute as generally displacing them in favor of a new federal rule. Indeed, the Court today tells state courts that they must routinely disregard clearly expressed state law defining the appropriate length of time parties should have to sue on state law claims in state tribunals. Under the Court's rule, too, the disregard of state limitations law promises to be not only routine but substantial. The Court's approach will require state courts to entertain state law claims that state law deems untimely not only by weeks or months but by many years, as 24 States, the National Conference of State Legislatures, and the Council of State Governments warn us. And the Court demands all this without offering any rational account why it is necessary or proper to the exercise of one of the federal government's limited and enumerated powers. It may only be a small statute we are interpreting, but the result the Court reaches today represents no small intrusion on traditional state functions and no small departure from our foundational principles of federalism. Respectfully, I dissent.

Start with the statute's key term. Where, as here, a law instructs us to "toll" a limitations period, we know it may be telling us to do one of (at least) two different things. The dictionary informs that to "toll" means "[t]o take away, bar, defeat, [or] annul." See 18 Oxford English Dictionary 204 (2d ed. 1989); Webster's New International Dictionary 2662 (2d ed. 1957) ("[t]o take away; to vacate; to annul"); Oxford Latin Dictionary 1947 (1982) ("tollere," the Latin origin, means to "remove" or "lift"). So when a statute speaks of tolling a limitations period it can, naturally enough, mean *either* that the running of the limitations period is suspended *or* that the effect of the limitations period is defeated. The first understanding stops the limitations clock running until a specified event begins it running again: call it the stop clock approach. The second

understanding allows the limitations clock to continue to run but defeats the effect of the clock's expiration for an additional specified period of time: call it the grace period approach.

That both of these understandings of the word "toll" are indeed possible and in fact historically common this Court has already explained in *Chardon* v. *Fumero Soto*, 462 U. S. 650 (1983):

> "'Tolling effect' refers to the method of calculating the amount of time available to file suit after tolling has ended. The statute of limitations *might merely be suspended*; if so, the plaintiff must file within the amount of time left in the limitations period. . . . *It is also possible to establish a fixed period such as six months or one year during which the plaintiff may file suit,* without regard to the length of the original limitations period or the amount of time left when tolling began." *Id.*, at 652, n. 1 (emphasis added).

When it comes to federal law today, *Chardon* has further explained, both kinds of tolling can be found. "[S]ome federal statutes provide for suspension" of the running of the limitations period, or the stop clock approach, while "other statutes establish a variety of different tolling effects," including grace periods for refiling after dismissal. *Id.,* at 660, n. 13.

Neither is it a surprise that *Chardon* acknowledged tolling statutes might come in (at least) these two varieties. At common law, both types of tolling were well and long known, if often employed in different circumstances to address different problems in equitably tailored ways.

Take the stop clock approach. While any generalization is subject to its exceptions, the stop clock approach was often used at common law to suspend a plaintiff's duty to bring a timely lawsuit if, and for the period, the plaintiff was prevented from coming to court due to some disability.

And this common law rule made common sense in those circumstances. After all, if (say) a defendant's fraud prevented the plaintiff from discovering his injury, it's easy enough to see why the limitations clock should stop running until the fraud is revealed and the disability thus dissipated.[1]

By contrast, the grace period approach was commonly used in cases where, as here, the plaintiff made it to court in time but arrived in the wrong court and had to refile in the right one. In this situation, equity didn't necessarily call for suspending the running of the limitations period for whatever arbitrary period of time—weeks or months or years—the suit happened to sit in court before dismissal. It's not as if the defendant or uncontrollable circumstances had conspired to prevent the plaintiff from proceeding during that period. Instead, the law commonsensically held that in these circumstances a grace period would suffice to allow the plaintiff a brief time to find his way to and refile in the correct court.[2]

–––––––––

[1] See Developments in the Law: Statutes of Limitations, 63 Harv. L. Rev. 1177, 1220 (1950) ("[C]ircumstances which—despite the existence of a right to sue—hinder or prevent suit have been recognized by courts and legislatures as cause for postponing the start of the statutory period until the occurrence of some additional fact, or for interrupting the running of limitations while some condition exists"); 13 American and English Encyclopaedia of Law 739–745 (1890) (discussing "disabilities which postpone the running of the statute," such as infancy, absence of the defendant, insanity, and imprisonment).

[2] See, *e.g., Woods* v. *Houghton*, 1 Gray 580, 583 (Mass. 1854) (grace period allowed after plaintiff filed in the "wrong county"); *Pittsburg, C., C. & St. L. R. Co.* v. *Bemis*, 64 Ohio St. 26, 27–28 (1901) (grace period allowed after suit was dismissed by federal court); *Cox* v. *Strickland*, 47 S. E. 912, 915 (Ga. 1904) (grace period allowed for refiling "in the proper forum"). Indeed, courts have rejected the stop clock approach in determining the time to refile. See *Martin* v. *Archer*, 3 Hill 211, 215 (SC 1837) ("A former suit is not a suspension of the statute during the time it is pending"). Simply put, when it came to tolling effects, the "pendency of legal proceedings" was "quite different from disabilities."

Indeed, grace periods appear to find their roots in a common law rule known as the "journey's account" that expressly sought to account for and afford to a dismissed party "the number of days which [he] must spend in journeying to the court" to refile his claim. 37 C. J., Limitations of Actions §526, p. 1082 (1925); see E. Coke, The Second Part of the Institutes of the Laws of England 567 (1642) (reprint 1797) ("[T]he common law set downe the certaine time of 15 dayes," because "a dayes journey is accounted in law 20 miles," as "a reasonable time . . . within which time wheresoever the court of justice sate in England, the party . . . wheresoever he dwelt in England . . . might . . . by the said account of dayes journies appeare in court"); *Spencer's Case*, 77 Eng. Rep. 267, 267–268 (1603) (party has "the benefit of a new writ by journeys accompts" after first writ "abated"); *Elstob* v. *Thorowgood*, 91 Eng. Rep. 1086, 1087 (1697) (party has 30 days to bring an action "by journeys account" to avoid "the Statute of Limitations").

When it comes to the statute before us, the textual and contextual clues point in the same and unsurprising direction. Much like the journey's account from which it originated, section 1367(d)'s "tolling" provision seeks to provide the plaintiff who finds her case dismissed because she filed in the wrong court a reasonable grace period to journey to the right court to refile. No more and no less.

Take the textual clues. Section 1367(d) says that "the period of limitations . . . shall be *tolled* while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer *tolling* period." Note that the law uses the words "tolled" and "tolling" in the same sentence. Normally, we assume that when Congress repeats a term in a statute the term's meaning remains constant throughout. And that assumption is

————

13 American and English Encyclopaedia of Law, at 745–746.

surely "at its most vigorous" where, as here, Congress repeats the same term in the same sentence. *Brown* v. *Gardner*, 513 U. S. 115, 118 (1994).

This traditional rule of construction tells us a great deal. It does because no one doubts that the state law "tolling period[s]" referenced in the second half of the sentence were at the time of section 1367(d)'s enactment—and still are—grace periods allowing parties a specified number of days or months after dismissal to refile in the proper court. See, *e.g.,* Colo. Rev. Stat. §13–80–111 (1990) (providing that the plaintiff "may commence a new action upon the same cause of action within ninety days after the termination of the original action").[3]   In fact, these statutes were often self-consciously patterned on the journey's account doctrine, seeking to address much the same problem the common law faced with much the same solution.[4]

───────────

[3] At the time of section 1367(d)'s enactment, it appears at least 31 of 36 States that provided tolling of some kind guaranteed a grace period. See also Brief for National Conference of State Legislatures et al. as *Amici Curiae* 1a–25a (discussing current state statutes).

[4] The "[p]rinciple of journeys account became definitely fixed and somewhat enlarged in England by an early statute. . . .   This statute, with varying changes, has been enacted in nearly all of the states of the Union."   19 American and English Encyclopaedia of Law 262 (2d ed. 1901); *Cox*, 47 S. E., at 915 (explaining that, "in lieu" of the journey's account, the colonial act of 1767 permitted "a new action within one year" of dismissal, and then the act of 1847 allowed a new action within six months of dismissal "notwithstanding the intervening bar of the statute"); *Denton* v. *Atchison*, 90 P. 764, 765 (Kan. 1907) (statute adopted "the common-law rule of 'journeys account'"); *English* v. *T.H. Rogers Lumber Co.*, 173 P. 1046, 1048 (Okla. 1918) ("Statutes such as ours are said to have their origin in the common law rule of 'journeys account'"); *Baker* v. *Cohn*, 41 N. Y. S. 2d 765, 767 (1943) ("Historically, the extension of one year's time . . . is said to be an outgrowth of the ancient common law rule of 'journey's account'"); *Sorensen* v. *Overland Corp.*, 142 F. Supp. 354, 362 (Del. 1956) ("The statute of 'journeys' account' is one founded under English law, and enacted in most jurisdictions today"); *Wilt* v. *Smack*, 147 F. Supp. 700, 702 (ED Pa. 1957) ("Statutes of Journey's Account originated in England and have long

And the fact that Congress used a variant of the word
"toll" in the second half of the sentence to refer to grace
periods strongly suggests it did so in the first half of the
sentence too. So that the first phrase "shall be *tolled* while
the claim is pending and for a period of 30 days" should be
understood to extend a grace period of 30 days after dis-
missal much as the second phrase "*tolling* period" is un-
derstood to refer the reader to parallel state law grace
periods affording short periods for refiling after dismissal.

  The alternative reading endorsed by the Court today
extends too little respect to Congress's competency as
drafter. It asks us to assume the legislature was so gar-
bled in its expression that it switched the meaning of the
term "toll" halfway through a single sentence without
telling anyone. It asks us to conclude that when Congress
spoke of the period "tolled" in the first part of the sentence
it meant to refer (unambiguously, no less) to a stop clock
approach even though it used the term "tolling period" to
refer to existing state law grace periods in the second part
of the sentence. The statute's text drops no hint of such a
silent switch and it's a lexicographical leap our traditional
rules of statutory interpretation warn against.

  That, though, represents just the beginning of the tex-
tual troubles with the approach the Court adopts. Con-
sider next the fact that section 1367(d) tells us to apply its
federal tolling rule "unless" state law provides a "longer
tolling period." In this way, the statute asks us to com-
pare the length of the state "tolling period" with the length
of the federal "tolling period" set by section 1367(d) and
apply the longer one. See *ante,* at 16 (courts apply the
federal rule if "the state-law tolling period will not be
longer than §1367(d)'s"). The equation we're asked to
perform is straightforward and sensible if we understand
both the state and federal "tolling periods" discussed in

——————

existed, in varying forms, among the states").

this statute as grace periods. We simply pick the longer grace period: is it the federal 30 day period or one provided by state law?

By contrast, the equation is anything but straightforward or sensible under the Court's approach. The Court tells us that, under its reading of the statute, the federal "tolling period" is the "duration of the claim's pendency in federal court" plus 30 days. See *ante,* at 12, 15. So the decision whether to apply the federal or the state tolling period turns not on the sensible question which would afford the plaintiff more time to refile but instead on the happenstance of how long the plaintiff's claim sat in federal court before dismissal. Under the Court's interpretation, we apply the federal stop clock rule if, but only if, the time the case happened to linger in federal court before dismissal (plus 30 days) is longer than the relevant state grace period. But to state the test is to see it is a nonsense—one we would not lightly attribute to any rational drafter, let alone Congress.

Consider some examples of the absurdities that follow from the apples-to-oranges comparison the Court's test requires. Say state law provides a 5 year statute of limitations and a 1 year grace period for refiling. The plaintiff files in federal court one day before the statute of limitations expires. The litigation in federal court lasts 1 year. Under the Court's view, the federal "tolling period" would be 1 year plus 30 days—the time the claim was pending in federal court plus 30 days after dismissal. That period is longer than the state tolling period of 1 year and so the federal tolling rule, not the state rule, controls—leaving the plaintiff only 31 days to refile her claim after dismissal even though state law would have allowed a full year.

That may be curious enough, but curiouser it gets. Now suppose the litigation in federal court lasts only 10 months. That makes the federal tolling period only 11 months (10 months plus 30 days). Under the Court's view,

state law now provides a longer tolling period (1 year) and the litigant gets a full year to refile in state court instead of 31 days. No one has offered a reason why the happenstance of how long the federal litigation lasted should determine how much time a litigant has to refile in state court. Yet that is what the Court's reading of section 1367(d) demands.

Of course, it's easy enough to imagine the rule the Court really wants to adopt today: it would like to afford litigants as a matter of federal law the benefit of a stop clock approach whenever doing so would yield more time to refile than the state's grace period would permit. But to accomplish so much we would need a very different statute than the one we have. We would need to be able to compare the relevant state law grace "tolling period" *not* with the federal "tolling period" as the statute says but with the *amount of time left under the relevant state limitations period on the date the plaintiff filed her federal suit*. The problem is, no one has even hinted how we might lawfully superimpose all those italicized words (entirely of our own devise) onto the statutory text.[5]

There are still more textual clues that we have lost our way today. Congress spoke of the federal tolling period as embracing "30 days after . . . dismissal." That language sounds like and fits with a traditional grace period or journey's account approach. As we've seen, grace periods often speak about affording parties some short period of time after dismissal to refile their claims. Meanwhile, this

_____

[5] In footnote 12 of its opinion, the Court suggests that a comparison between state and federal tolling periods may not be "inevitable" and that in "extraordinary circumstances" like those discussed above a comparison between the state tolling period and the time left on the clock before the federal filing might prove "more natural." *Ante,* at 16, n. 12. But even here the Court does not attempt to explain how the latter comparison might be fairly extracted from the statutory text—let alone only in "extraordinary circumstances."

language proves no small challenge to square with a stop clock approach. Generally we say a clock is stopped due to the onset of a particular event like a disability: *something* usually causes the stopping of the clock and when that *something* goes away, the clock restarts. Here, the Court says, the clock stops once a claim is pending in federal court. Yet it doesn't restart when that something—the claim's pendency—goes away but instead waits another 30 days before ticking again. All without any apparent reason for the additional delay.

This case illustrates the oddity. The petitioner filed her suit in federal court with 23 months remaining on the three year statute of limitations. The case remained in federal district court for nearly three years before dismissal. Under the grace period approach the 30 day provision does just as it appears, providing petitioner with 30 days to journey to and refile in the correct court. Under the stop clock approach, though, the statute affords the petitioner 23 months *plus* a random 30 days more to refile. Indeed, on the stop clock approach the *only* work the 30 day period is even imaginably left to do comes in cases where the plaintiff filed her federal suit at the very end of the limitations period. And if that's the only problem Congress sought to address, it chose a mighty murky way to do it, for the parties point to not a single stop clock provision in all of federal law that includes language anything like this. All while (again) this language fits hand in glove with every grace period statute known.[6]

──────────

[6] The Court offers a couple of competing textual arguments but neither can bear much weight.

*First*, the Court suggests that deriving a grace period from the statutory term "period of limitations" requires "strain[ing]." *Ante,* at 12. But the fact is both the grace period and stop clock interpretations require some (and some very similar) inferences. The grace period approach construes the term "period of limitations" as directing us to the "effect of the period of limitations" that is tolled or taken away. For its part

Beyond all these textual clues lie important contextual ones too. When Congress replants the roots of preexisting law in the federal code, this Court assumes it brings with it the surrounding soil, retaining the substance of the tradition it engages. Respect for Congress, this Court has held, means assuming it knows and "legislate[s] against a background of [the] common law . . . principles" found in the field where it is working. *Samantar* v. *Yousuf*, 560 U. S. 305, 320, n. 13 (2010); see also *Goodyear Atomic Corp.* v. *Miller*, 486 U. S. 174, 184–185 (1988). And, as we've seen, the state law of tolling Congress expressly referenced and replanted in section 1367(d) comes heavily encrusted with meaning. In cases involving dismissal and refiling, state statutory law and the common law from which it grew have long afforded a grace period to allow the litigant an appropriately tailored time to find his way to the proper court. Meanwhile, a stop clock approach isn't usually part of this ecosystem for nothing has dis-

––––––––––

meanwhile, the stop clock approach construes "period of limitations" to refer to the "running of the period of limitations" that is tolled or taken away. The question is which inference is more persuasive. And in light of the dual kinds of tolling the law has long recognized, as well as the textual and contextual clues before us (some still to be discussed), the better answer is clear.

*Second*, the Court complains that the grace period interpretation renders "superfluous" the phrase "while the claim is pending." *Ante,* at 12. But the phrase does important work under the grace period approach, ensuring that the expiration of limitations period does not take effect while the claim is pending in federal court. Indeed and somewhat paradoxically, the Court itself implicitly recognizes that the language *does* real work when it suggests (in its next sentence no less) that the grace period approach could "yield an absurdity" by working to revive a claim that has already expired before it is brought in federal court. *Ante,* at 12–13. There is of course no absurdity in it, for the term "while the claim is pending" does the important work of addressing that very concern, preventing the expiration of the statute of limitations from taking effect while the claim is pending even as the language also and sensibly permits the statute of limitations to take effect if it expires before the plaintiff files his claim in federal court.

abled the litigant from reaching a court in the first place and all he must do is journey from the old court to the new one. We don't assume Congress strips replanted statutes of their soil, and we should not assume Congress displaced so much tradition in favor of something comparatively foreign.[7]

The Court's reformation of the statute introduces another problem still—one of significantly greater magnitude yet. In our constitutional structure, the federal government's powers are supposed to be "few and defined," while the powers reserved to the States "remain . . . numerous and indefinite." The Federalist No. 45, p. 328 (B. Wright ed. 1961) (Madison); *McCulloch* v. *Maryland*, 4 Wheat. 316, 405 (1819). No doubt, the Constitution affords Congress the authority to make laws that are "necessary and proper" to carry out its defined duties. Art. I, §8, cl. 18. But it is difficult to see how, on the Court's interpretation, section 1367(d) might be said to survive that test—how it

—————

[7]The Court dismisses this "history lesson" on the ground that it doesn't know if Congress had "the ancient common-law . . . in mind." *Ante,* at 14, n. 11. But respect for Congress's competency means we presume it knows the substance of the state laws it expressly incorporates into its statutes and the common law against which it operates. See *supra,* at 11. When the Court turns to offer its own competing contextual evidence, it observes that a stop clock approach can be found in many other places in the U. S. Code. See *ante*, at 7, and n. 4, 15–16. But it turns out the Court's stop clock examples often involve situations where some disability prevents the plaintiff from proceeding to court. See, *e.g.,* 26 U. S. C. §6213(f)(1) (limitations period for filing a petition in the Tax Court "shall be suspended for the period during which the debtor is prohibited . . . from filing a petition"); §6503(a)(1) (limitations period on making an assessment shall "be suspended for the period during which the Secretary is prohibited from making the assessment"). Notably, not one of the Court's examples purports to address a situation like the one we face: where the plaintiff has proven able to come to court but merely chosen the wrong one. The Court's own contextual evidence, then, serves to illustrate just how unusual and out of place a stop clock approach would be here.

might be said to be necessary and proper to effectuate any recognized federal power or how it could be called anything other than an unconstitutional intrusion on the core state power to define the terms of state law claims litigated in state court proceedings.[8]

Under our precedent, the analysis here begins with *Jinks* v. *Richland County*, 538 U. S. 456 (2003). Without some tolling rule for dismissed state law supplemental claims, the Court in *Jinks* noted, federal courts would be left with "three basic choices:" (1) "condition dismissal of the state-law claim on the defendant's waiver of any statute-of-limitations defense in state court"; (2) "retain jurisdiction over the state-law claim even though it would more appropriately be heard in state court"; or (3) "dismiss the state-law claim but allow the plaintiff to reopen the federal case if the state court later held the claim to be time barred." *Id.,* at 462–463. All three choices, the Court held, would negatively affect the "'administration of justice' in *federal* court" and thus impair the exercise of the enumerated "judicial power" of the federal government in Article III. *Id.,* at 462 (emphasis added). Accordingly, the Court reasoned, *some* tolling rule "assur[ing] that state-law claims asserted under [the supplemental jurisdiction statute] will not become time barred while pending in federal court" is necessary and proper to the execution of the federal judicial power. *Id.,* at 464.

The necessary and proper federal interest *Jinks* recognized is fully discharged by a grace period. Even petitioner appears to concede this. See Brief for Petitioner 27 ("Of

———————

[8] Of course, the case before us arises from litigation in the District of Columbia where the federal government enjoys plenary power. See Art. I, §8, cl. 17. But the federalism concern here cannot be ignored, as the Court today rightly acknowledges (*ante,* at 16–19), because the statute at issue applies nationwide and the vast bulk of its applications come in the States and implicate state causes of action, state limitations laws, and state court proceedings.

course, the grace period approach also guarantees a plaintiff who is unsuccessful in federal court the opportunity to bring a claim in state court"). Nor could anyone easily argue otherwise. *Jinks* itself proceeded to uphold the constitutionality of section 1367(d) as necessary and proper on the basis of an understanding that the statute guaranteed just 30 days to a disappointed litigant to refile in state court. No one in *Jinks* even hinted that a longer period might be necessary or proper to serve any valid federal interest.[9]

For good reason, it turns out. Trying to imagine how the Court's novel twist on section 1367(d) might serve a necessary and proper federal interest is a hard business. To discharge the federal interest in preventing state law claims from "becom[ing] time barred while pending in federal court" it may be necessary to impose a short grace period. But how is it necessary to do anything more than that, like consult the happenstance of how long the federal court took to dismiss the case and then tack an equivalent number of months or years onto state law limitations periods? What federal interest could *that* even plausibly serve? The Court does not and cannot attempt an answer

─────────

[9] See Brief for Petitioner in *Jinks* v. *Richland County*, O.T. 2002, No. 02–258, p. 9 ("The tolling window created lasts only 30 days after dismissal without prejudice from district court[.]"); *id.*, at 37 (section 1367(d) "provides a *de minimis* window in which a plaintiff may refile in state court if the limitations period expires during the pendency of the federal district court action"); Brief for Respondent in No. 02–258, p. 31 (describing section 1367(d) as providing "a thirty-day tolling window"); Brief for United States in No. 02–258, pp. 16, 22 (describing section 1367(d) as "minimally intrusive on state prerogatives" since it ensures that the "statute of limitations on the pendent claim will not expire during the pendency of the federal-court action"); Pet. for Cert. in No. 02–258, p. 22 ("Section 1367(d) merely saves—for a maximum excess period of 30 days—a preexisting lawsuit that must be refiled to allow the matter to be heard in a forum preferable to the State, namely, in its own courts"); see also Brief for State of Wisconsin et al. as *Amici Curiae* 8–9.

because its proffered solution is simply orthogonal to any federal concern.

To be sure, the Court suggests that its approach will help the States. See *ante*, at 19. But a great many States have suggested the opposite, complaining to us that the Court's approach will regularly relegate to the dustbin their own state limitations policy choices. See Brief for State of Wisconsin et al. as *Amici Curiae* 22–27; Brief for National Conference of State Legislatures et al. as *Amici Curiae* 6–29. And surely they would seem better positioned than we to know their own interests. To this, the Court replies that "[w]ere the dissent's position to prevail, cautious plaintiffs would surely" file "two actions [one in federal, the other in state court] and ask the state court to hold the suit filed there in abeyance pending disposition of the federal suit," causing "plaintiffs to resort to wasteful, inefficient duplication." *Ante,* at 19. But, of course, this observation does nothing to tell us whether stop clock tolling is necessary to serve a *federal* interest. Nor does it even tell us whether stop clock tolling is necessary to help the *States*. A very long historical record before us suggests that grace periods have worked well to obviate the need for simultaneous filings in state and federal court; the Court offers no account why its innovation might be needed only now to rescue States from their own legislative choices about the appropriate lifespan of their state law claims.

The Court's approach isn't just unnecessary; it isn't proper either. A law is not "proper for carrying into [e]xecution" an enumerated power if it "violates the principle of state sovereignty" reflected in our constitutional tradition. *Printz* v. *United States*, 521 U. S. 898, 923–924 (1997). The word "proper" was "used during the founding era to describe the powers of a governmental entity as peculiarly within the province or jurisdiction of that entity." Lawson & Granger, The "Proper" Scope of Federal

Power: A Jurisdictional Interpretation of the Sweeping Clause, 43 Duke L. J. 267, 297 (1993). Limitations periods for state law claims fall well within the peculiar province of state sovereign authority. As Chancellor Kent explained, "'[t]he period sufficient to constitute a bar to the litigation of sta[l]e demands, is a question of municipal policy and regulation, and one which belongs to the discretion of every government, consulting its own interest and convenience.'" *Sun Oil Co.* v. *Wortman*, 486 U. S. 717, 726 (1988) (quoting 2 J. Kent, Commentaries on American Law 462–463 (2d ed. 1832)). Described as "laws for administering justice," time bars are "one of the most sacred and important of sovereign rights and duties." *Hawkins* v. *Barney's Lessee*, 5 Pet. 457, 466 (1831). And "from a remote antiquity," they have been the province of the sovereign "by which it exercises its legislation for all persons and property within its jurisdiction." *McElmoyle ex rel. Bailey* v. *Cohen*, 13 Pet. 312, 327 (1839). Our States have long "exercise[d] this right in virtue of their sovereignty." *Ibid.*

The decision today gives short shrift to these traditional interests. Just consider how differently the two approaches treat States when it comes to one of their most "important of sovereign rights." Under a grace period approach, Congress simply fills a void, for the great bulk of States provide for grace periods of 30 days or longer; only a few States don't allow that much or don't speak to the question. See n. 3, *supra*. So on the grace period account, Congress provides a modest backstop consistent with existing state law. By contrast, under the stop clock interpretation, state law grace periods are displaced whenever the federal litigation (plus those odd 30 days) happens to be longer than the state law grace period. And that, of course, is sure to happen often, for federal litigation is no quick business and state law grace periods often are. Any time federal litigation (plus, again, 30 days) lasts

longer than the 30 or 60 or 90 or 365 day grace period found in state law, state law will be forced to give way, and a federally mandated stop clock approach will usurp its place.

The stop clock approach, then, ensures that traditional state law judgments about the appropriate lifespan of state law claims will be routinely displaced—and displaced in favor of nothing more than a fortuity (the time a claim sits in federal court) that bears no rational relationship to any federal interest. The Court's approach forces state courts to entertain routinely state law claims that the state legislatures treat as no claims at all. And it forces state courts to entertain claims that aren't just stale by days or weeks under state law, but stale by months or even many years too. So, for example, take a plaintiff who files suit in federal court shortly after a six year state law limitations period begins running and the litigation lasts six years before it's finally dismissed. Under the Court's approach, federal law will now promise the plaintiff nearly six years more (plus those stray 30 days again) to refile his claim in state court. Neither is this illustration fiction; it is drawn from the facts of *Berke* v. *Buckley Broadcasting Corp.*, 821 A. 2d 118, 121 (N. J. Super. Ct. App. Div. 2003). See also *Krause* v. *Textron Fin. Corp.*, 2007 WL 8054628, \*1–2 (Fla. Cir. Ct. 2007); Brief for State of Wisconsin et al. as Amici Curiae 20–21 (offering many more examples). Given all this, it's no wonder that 24 States, the National Conference of State Legislatures, and the Council of State Governments complain that the result the Court reaches today flies in the face of federalism.[10]

——————

[10] The Court's reply—that stop clock tolling is "standard" and "off-the-shelf"—is no answer. *Ante,* at 19. The propriety of a legal tool in one area does not establish its propriety in all; while stop clock tolling may be standard and off-the-shelf in other contexts (such as for equitable tolling) that doesn't mean it is necessary and proper here. Indeed, and as we've seen, the "standard" and "off-the-shelf" solution to the problem

The Court today clears away a fence that once marked a basic boundary between federal and state power. Maybe it wasn't the most vital fence and maybe we've just simply forgotten why this particular fence was built in the first place. But maybe, too, we've forgotten because we've wandered so far from the idea of a federal government of limited and enumerated powers that we've begun to lose sight of what it looked like in the first place. If the federal government can now, without any rational reason, force States to allow state law causes of action in state courts even though the state law limitations period expired many years ago, what exactly can't it do to override the application of state law to state claims in state court? What boundaries remain then?

I respectfully dissent.

––––––––––

of dismissal and the need to refile is the one adopted at common law and by state law: a grace period. If we're interested in looking for the right shelf, that's the one.