[Cite as *Armatas v. Aultman Hosp.*, 2022-Ohio-4577.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STEVEN A. ARMATAS, ET AL | : | Hon. Earle E. Wise, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiffs-Appellants | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2021 CA 00133 |
| AULTMAN HOSPITAL, ET AL | : |  |
|  | : |  |
| Defendants-Appellees | : |  |
|  | : | OPINION |

CHARACTER OF PROCEEDING: Civil appeal from the Stark County Court of
Common Pleas, Case No. 2020 CV 00741

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: December 15, 2022

APPEARANCES:

For Plaintiffs-Appellants

STEVEN A. ARMATAS, ET AL
7690 Bucknell Circle N.W.
North Canton, OH 44720

For ICU Defendants-Appellees

BRIAN GANNON
101 West Prospect Avenue
Cleveland, OH 44115

For Defendants-Appellees

PAUL J. PUSATERI
4684 Douglas Circle
P.O. Box 35459
Canton, OH 44735

*Gwin, J.*

**{¶1}** Appellants appeal the judgment entries by the Stark County Court of Common Pleas granting appellees' motion for judgment on the pleadings and motion for summary judgment.

*Facts & Procedural History*

**{¶2}** Appellant Steven Armatas is the adult son and executor of the estate of his father, Alexander Armatas. In 2014, Alexander was taken by ambulance to Aultman Hospital after suffering a cardiac event. Alexander was 97 years old when he was admitted to Aultman; Steven avers that Alexander was in good health prior to this episode. He was intubated and placed on a respirator.

**{¶3}** Steven alleges that he was exposed to "relentless, overbearing pressure" to remove his father from life support. Steven was concerned about many aspects of Alexander's care, including discoloration on his father's toes and leg. Alexander was diagnosed with dry gangrene. Steven sought second opinions about his father's diagnosis and prognosis. He alleges the ICU Defendants interfered with his attempts to obtain a second opinion. Steven avers that Dr. Miller, Dr. Nashawati, and Dr. Boutros "screamed" at him about his father's care and condition. Alexander passed away on December 31, 2014.

**{¶4}** On December 28, 2016, Steven, individually, as executor of the estate of Alexander, and as the personal Medicare representative for Alexander ("appellants"), filed a complaint in the Stark County Court of Common Pleas against Aultman Health Foundation, Aultman Hospital, Aultcare Insurance, Ohio Physicians Professional Corporation, Dr. Stjernholm, Pulmonary Physicians of Canton, Dr. Nashawati, Dr.

Boutros, Dr. Miller, Dr. Bou Serhal, and Dr. Knoch, alleging claims of medical negligence, wrongful death, respondeat superior, agency by estoppel, and punitive damages. Appellants amended their complaint to add claims for breach of contract, violations of R.I.C.O., violations of the Medicare Act and Federal Medicare Advantage regulations, negligent supervision and hiring, fraud, intentional infliction of emotional distress, interference with business relations, denial of court, violation of federal civil rights, and civil conspiracy. On February 20, 2018, appellants voluntary dismissed, without prejudice, all causes of action pursuant to Civil Rule 41(A)(1)(a).

{¶5} On February 15, 2018, Armatas, individually, as executor of the estate of Alexander, and as the personal Medicare representative for Alexander, filed a lawsuit in federal court against Aultman Health Foundation, Aultman Hospital, Aultcare Insurance Company, Ohio Physicians Professional Corporation, Pulmonary Physicians, Inc., Dr. Stjernholm, Dr. Nashawati, Dr. Boutros, Dr. Miller, Dr. Bou Serhal, Matthew Knoch, Mark Rose, Dr. Haban, and Timothy Regula, with the following causes of action: medical malpractice; wrongful death; breach of contract; violations of the federal Medicare Act and Federal Medicare Advantage regulations; negligent hiring and supervision; fraud; intentional infliction of emotional distress; interference with business relations; denial of court; violation of federal civil rights; civil conspiracy; and violations of the Racketeer Influenced and Corrupt Practices Act ("R.I.C.O.").

{¶6} The "ICU Defendants" (Boutros, Nashawati, Knoch, Miller, Bou Serhal, Pulmonary Physicians), filed a motion for judgment on the pleadings as to the claims alleged against them. The federal magistrate issued a detailed report and recommendation on December 19, 2019, recommending that all counts asserted against

the ICU Defendants, with the exception of Count II (wrongful death), be dismissed. The magistrate reasoned: the medical malpractice claim was not timely filed under R.C. 2305.113 and equitable tolling/estoppel does not apply; the fraud, intentional infliction of emotional distress, and interference with business relations claims are "medical claims" under R.C. 2305.113 and are barred by the one-year statute of limitations; and the plaintiffs failed to state a claim for fraud because there is no allegation in the complaint as to how the plaintiffs relied on the allegedly false statements by the ICU Defendants.

{¶7} Similarly, the "Aultman Defendants" (Aultman Hospital, Aultman Health Foundation, and Aultcare Insurance Company) filed a motion for judgment on the pleadings as to the claims against them. The federal magistrate issued a detailed report and recommendation on December 19, 2019, recommending that all counts asserted against the Aultman Defendants be dismissed, except the wrongful death claim.

{¶8} The magistrate reasoned: the claims against the Aultman Defendants, except for the denial of court and abuse of process claims, should be dismissed on the basis of res judicata because they could have been brought in the declaratory judgment action filed in state court by Armatas in 2015 against Aultman Health; the medical malpractice claim was not timely filed under R.C. 2305.113 and equitable tolling/estoppel does not apply; the negligent hiring supervision, fraud, intentional infliction of emotional distress, and interference with business relations claims are "medical claims" under R.C. 2305.113 and are barred by the statute of limitations; the breach of contract, violations of the Federal Medicare Advantage Act and Medicare Advantage Act, fraud, denial of court, abuse of process, civil conspiracy, and R.I.C.O claims should be dismissed for failure to state a claim because a private cause of action does not exist to review the handling of

Medicare Advantage Plan grievances, the allegations of fraud are conclusory, Armatas did not sufficiently plead an abuse of process claim, Armatas did not demonstrate the alleged civil conspiracy was based on an actionable underlying tort, and there was not a predicate act for a R.I.C.O claim.

{¶9}    The "Stjernholm Defendants" (Stjernholm and Ohio Physicians Professional Corporation) also filed a motion for judgment on the pleadings.  The federal magistrate issued a report and recommendation on December 19, 2019, recommending the motion be granted as to the medical malpractice claim.  The magistrate reasoned that the medical malpractice claim was not timely filed under R.C. 2305.113 and equitable tolling/estoppel does not apply.

{¶10}  The "Rose Defendants" (Rose, Haban, and Regula) filed a motion for judgment on the pleadings as to the count against them for violation of civil rights.  The federal magistrate issued a report and recommendation on January 2, 2020, recommending that the motion be granted because Armatas failed to allege facts showing the Rose Defendants were state actors.

{¶11}  Armatas filed objections to the magistrate's reports and recommendations. The federal court issued a "memorandum of opinion and order" on March 27, 2020.  The court specifically analyzed and ruled upon each of the objections, and adopted the reports and recommendations of the magistrate.  The court explained its rationale as follows: there is no legal support for Armatas' contention that the claims against Rose, Haban, and Regula are state actors simply because Aultcare's Medical Advantage Plan is Medicare; pursuant to Ohio appellate law, the claims the plaintiffs assert against the Aultman Defendants and the ICU Defendants are "medical claims" and thus are subject

to the one-year statute of limitations; Armatas did not allege any legal injury flowing from the alleged misrepresentation in his fraud claim; and Armatas' RICO claims do not allege any predicate acts.

{¶12} In the March 27, 2020 judgment entry, the federal court: granted in part and denied in part the ICU Defendants' motion to dismiss; granted Armatas' motion to dismiss the Aultman Defendants' counterclaims; granted in part and denied in part the Aultman Defendants' motion for judgment on the pleadings; granted the motion for judgment on the pleadings by the Stjernholm Defendants'; and granted the motion for judgment on the pleadings by the Rose Defendants.

{¶13} The federal court issued an "order and judgment entry" on March 31, 2020. First, the court denied Armatas' motion to amend his complaint to modify his RICO claim. The balance of the judgment entry states:

> On March 27, 2020, the undersigned adopted numerous Reports and Recommendations from the magistrate judge and resolved various motions to dismiss and/or motions for judgment on the pleadings. As a result, no federal cause of action remains in this proceeding.
>
> 28 U.S.C. § 1867(c)(3) provides: "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if …the district court has dismissed all claims over which is has original jurisdiction[.]" As this Court has dismissed all claims over which it had original jurisdiction, the Court hereby declines to exercise supplemental jurisdiction over the remaining state law claims. The remaining claims are dismissed without prejudice, and this matter is hereby CLOSED.

{¶14} On April 30, 2020, Armatas, individually, as personal Medicare Representative for Alexander, and executor of the state of Alexander, filed a complaint in the Stark County Court of Common Pleas against Aultman Hospital, Aultcare Insurance Company, Ohio Physicians Professional Corporation, Dr. Stjernholm, Pulmonary Physicians, Dr. Nashawati, Dr. Boutros, Dr. Miller, Dr. Bou Serhal, Dr. Knoch, and Rose with the following causes of action: medical malpractice, wrongful death, survivorship action, breach of contract, fraud, intentional infliction of emotional distress, denial of court, abuse of process, violation of 42 U.S.C. §1983, civil conspiracy, and violations of the R.I.C.O. Act. Appellants filed an amended complaint on November 30, 2020, alleging the same claims.

{¶15} On December 23, 2020, the ICU Defendants filed a motion for judgment on the pleadings based upon res judicata, statute of limitations, and the statute of repose. Appellants filed a memorandum in opposition.

{¶16} Subsequently, the Rose Defendants, the Stjernholm Defendants, and the Aultman Defendants each filed motions for judgment on the pleadings. Appellants filed a memorandum in opposition. Each of the appellees filed a reply brief.

{¶17} The trial court issued a judgment entry on May 6, 2021, granting in part and denying in part the motions for judgment on the pleadings.

{¶18} The court entered judgment for appellees on the following claims: medical malpractice, wrongful death, survivorship action, fraud, intentional infliction of emotional distress, denial of access to court, abuse of process, malicious prosecution, interference with business relations, civil conspiracy, and defamation. The court denied the motion as to the following claims: breach of contract, violation of 42 U.S.C. § Section 1983, and

violations of the federal and Ohio R.I.C.O. Act. The trial court found that the accrual date for Counts I and III (medical negligence and survivorship) was December 31, 2014, and appellants did not file their initial complaint by the statute of limitations deadline of December 31, 2015. The court found the intentional infliction of emotional distress claims and the fraud claims against the ICU Defendants were "medical claims," and thus subject to the one-year statute of limitations. Further, the trial court determined the medical claims and wrongful death claims failed to comply with the statute of repose, and the abuse of process/denial of court claims were barred by the statute of limitations, and had other defects entitling appellees to judgment on the pleadings. Finally, the trial court found appellants failed to allege all the required elements for a malicious prosecution claim, an interference with business claim, a defamation claim, and a civil conspiracy claim. The trial court declined to grant the motions based upon res judicata because it would require the trial court to look at documents (i.e, the federal court documents) beyond the face of the complaint.

{¶19} On June 30, 2021, the Aultman Defendants, Stjernholm Defendants, and Rose Defendants filed a motion for summary judgment as to the remaining claims. Appellants filed a memorandum in opposition.

{¶20} The trial court issued a final judgment entry on October 29, 2021, granting the motions for summary judgment on the following claims: breach of contract, violation of 42 U.S.C. § 1983, violations of the R.I.C.O. Act, violations of the Ohio R.I.C.O. Act, and fraud with regards to the Aultman Defendants. The trial court found the federal judgment entries were judgments as a matter of law and constituted a prior final decision on the merits for purposes of res judicata. Further, that the second action (this case) involves

the same parties, or their privies, as the first action. Finally, that the second action raises claims that were or could have been litigated in the first action, and that the second action arises out of the transaction or occurrence that was the subject matter of the previous action. Alternatively, the trial court found the claims were barred by the applicable statutes of limitations.

{¶21} Appellants appeal the judgment entries of the Stark County Court of Common Pleas and assign the following as error:

{¶22} "I. THE STATE TRIAL COURT COMMITTED ERROR BY DISREGARDING A FEDERAL COURT ORDER WHICH DISMISSED ALL OF PLAINTIFF'S STATE LAW CAUSES OF ACTION WITHOUT PREJUDICE.

{¶23} "II. THE STATE TRIAL COURT COMMITTED ERROR BY RULING PLAINTIFF COULD NOT AVAIL HIMSELF OF 28 USC SECTION 1367(D) TO RE-FILE HIS STATE LAW CLAIMS IN STATE COURT.

{¶24} "III. THE STATE TRIAL COURT COMMITTED ERROR BY DISMISSING SEVERAL OF PLAINTIFF'S STATE LAW CLAIMS FOR ALLEGED 'ADDITIONAL DEFECTS.'"

{¶25} We initially note that appellants make clear in their briefing and arguments that while the complaint originally contained fourteen causes of action, they have chosen to appeal only the following counts: (1) wrongful death; (2) survivorship action; (3) breach of contract; (4) fraud; and (5) intentional infliction of emotional distress.

*Standards of Review*

**{¶26}** The trial court granted judgment on the pleadings for all appellees on the wrongful death, survivorship, and intentional infliction of emotional distress claims, and for the ICU Defendants on the fraud claim.

**{¶27}** Civil Rule 12(C) provides, "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." The standard of review for the grant of a motion for judgment on the pleadings is the same as the standard of review for a Civil Rule 12(B)(6) motion, which requires the appellate court to independently review the complaint to determine if the dismissal was appropriate. *Ferreri v. The Plain Dealer Publishing Co.*, 142 Ohio App.3d 629, 756 N.E.2d 712 (8th Dist. Cuyahoga 2001). A motion for judgment on the pleadings pursuant to Civil Rule 12(C) presents only questions of law. *Peterson v. Teodosio*, 34 Ohio St.2d 161, 297 N.E.2d 113 (1973). The determination of a motion under Civil Rule 12(C) is restricted solely to allegations in the pleadings and the nonmoving party is entitled to have all material allegations in the complaint, with all reasonable inferences to be drawn therefrom, construed in its favor. *Id.* Evidence in any form cannot be considered. *Conant v. Johnson*, 1 Ohio App.2d 133, 204 N.E.2d 100 (4th Dist. 1964). In considering such a motion, one must look only to the face of the complaint. *State ex rel. Osborne v. City of North Canton*, 5th Dist. Stark No. 2018CA00132, 2019-Ohio-1744.

**{¶28}** The trial court granted summary judgment in favor of the Aultman Defendants on the claims for breach of contract and fraud.

**{¶29}** Civil Rule 56 states, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

{¶30} A trial court should not enter summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. Of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

**{¶31}** When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

I.

**{¶32}** In their first assignment of error, appellants contend the trial court committed error in finding the claims in this case were barred by the doctrine of res judicata because the "federal court clearly intended to dismiss all of the state law claims raised by plaintiff" without prejudice to refiling in state court.

**{¶33}** The trial court did not dismiss any of the ICU Defendants' claims based on res judicata. The trial court did not dismiss the wrongful death, survivorship, or intentional infliction of emotional distress ("IIED") claims against any the defendants based on res judicata. The only claims the trial court dismissed based on res judicata are the breach of contract claim and fraud claim against the Aultman Defendants and Stjernholm Defendants. Accordingly, we address res judicata specifically as to the breach of contract claim against the Aultman Defendants, and the fraud claim against the Aultman and Stjernholm Defendants.

**{¶34}** Res judicata can be divided into two separate subparts: claim preclusion and issue preclusion. *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995). Claim preclusion holds that a valid, final judgment on the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. *Id.* Issue preclusion precludes relitigation of any "issue that has been actually and necessarily litigated and determined in a prior action."

*Fort Frye Teachers Assn v. State Emp. Rels. Bd.*, 81 Ohio St.3d 392, 692 N.E.2d 140 (1998). An issue "that was actually and directly at issue in a previous action, that was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privities, whether the cause of action in the two actions be identical or different." *Id.*

{¶35} Res judicata bars a second action when: (1) a court of competent jurisdiction rendered a valid, final judgment on the merits in an earlier action; (2) the second action involves the same parties or their privies; (3) the second action raises claims that were or could have been litigated in the first action; and (4) the second action arises out of the same transaction or occurrence that was the subject of the first action. *State ex rel. Armatas v. Plain Twp. Of Bd. of Zoning Appeals*, 160 Ohio St.3d 161, 2020-Ohio-2973, 154 N.E.3d 74.

{¶36} The Ohio Supreme Court has held, "a claim litigated to finality in the United States District Court cannot be relitigated in a state court when the state claim involves the identical subject matter previously litigated in federal court, and there is * * * no issue of party or privity." *Rogers v. City of Whitehall*, 25 Ohio St.3d 67, 494 N.E.2d 1387 (1986).

{¶37} Appellants argue that res judicata does not apply to bar their claims in this case because the federal court did not render a valid, final judgment on the merits. Appellants cite the language in the federal court's March 30, 2020 judgment entry that the court "declines to exercise supplemental jurisdiction over the remaining state law claims. The remaining claims are dismissed without prejudice, and this matter is hereby CLOSED." Appellants' position is that the federal court dismissed *all* of their state court claims without prejudice, not just the wrongful death claims.

{¶38} We disagree with appellants' interpretation of the federal court judgment entries. The federal court judge rendered a judgment on each of the state law claims, except for the wrongful death claims against the defendants.

{¶39} The federal court granted motions for judgment on the pleadings. "A judgment on the pleadings is an adjudication on the merits, and, when sustained, results in a final judgment." *Bork v. Downes*, 6th Dist. Lucas No. L-88-297, 1989 WL 65118 (June 16, 1989); *Estate of Hards v. Walton*, 8th Dist. Cuyahoga No. 93185, 2010-Ohio-3596; *Rayess v. Educational Comm. For Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, 983 N.E.2d 1267.

{¶40} The federal court granted the motions under the applicable standard for granting motions for judgment on the pleadings. The federal court clearly undertook a substantive review of the state claims, and issued its orders after the parties conducted discovery and submitted dispositive motions. The magistrate issued multiple and detailed reports and recommendations. The district court judge specifically analyzed and ruled upon each of appellants' objections, and adopted the reports and recommendations of the magistrate, which included a detailed analysis of each of the state claims. The federal court issued detailed judgment entries that set forth the legal reason as to why it was dismissing each count. Appellants chose not to appeal this judgment entry issued by the federal district court.

{¶41} While a federal court's dismissal of a state law claim on solely jurisdictional grounds in not an adjudication on the merits, in this case, the federal court did decide the claims (other than the wrongful death claims) on the merits, as evidenced by the granting of the judgment on the pleadings. *Musa v. Gillett Communications, Inc.*, 119 Ohio App.3d

673, 696 N.E.2d 227 (8th Dist. Cuyahoga 1997) (res judicata applied in state action when federal district court issued an order disposing of the pending motions and issued a judgment entry; despite the plaintiff's characterization of the complaint filed in federal court, it is premised on the same set of operative facts that serve as a basis for the plaintiff's complaint filed in state court); *Marrie v. International Local 717*, 11th Dist. Trumbull No. 2001-T-0046, 2002-Ohio-3148 (cannot attack federal decision; if the plaintiff was troubled by federal court's disposition of the lawsuit, the plaintiff should have filed a direct appeal); *Deaton v. Burney*, 107 Ohio App.3d 407, 669 N.E.2d 1 (2nd Dist. Montgomery 1995) (valid, final judgment on the merits of federal and state law claims in the prior action in federal court when the federal court found the claims barred by the relevant statute of limitations).

{¶42} Accordingly, we find the federal court judgment was a final judgment on the merits for purposes of res judicata as to the state claims, except for the wrongful death claims that were the "remaining" claims the federal court dismissed without prejudice.

{¶43} Appellants also contend that, pursuant to established case law, once a federal court has decided all of the federal claims, it was required to dismiss all of the state claims. We disagree.

{¶44} The federal court claims asserted by appellants conferred subject matter jurisdiction on the federal court. *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402 (6th Cir. 1991). Appellants cite *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) for the proposition that if the federal claims are dismissed prior to trial, the state claims must also be dismissed. However, as explained by the Sixth Circuit, the Supreme Court later modified *United Mine Workers* and held that

"we are not willing to defeat the commonsense policy of pendent jurisdiction * * * by a conceptual approach that would require jurisdiction over the primary claim at all stages as a prerequisite to the resolution of the pendent claim." *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).  When the Sixth Circuit read the two Supreme Court cases together, it held, "it is apparent that trial courts do possess some discretion to decide a pendent state law claim once the federal basis for jurisdiction is dismissed.  A trial court must balance the interests in avoiding needless state law decisions discussed in *United Mine* against the 'commonsense' policies of judicial economy discussed in *Rosado* when deciding whether to resolve a pendent state claim on the merits." *Providence v. Cleveland Press Publishing Co.*, 787 F.2d 1047 (6th Cir. 1986).

**{¶45}** When a district court dismisses all claims independently qualifying for the exercise of federal jurisdiction, "federal district courts may exercise supplemental jurisdiction over state claims not otherwise within their adjudicatory authority if those claims are 'part of the same case or controversy' as the federal claims the plaintiff asserts." *Artis v. District of Columbia*, 138 S.Ct. 594, 199 L.Ed.2d 473 (2018).  Further, "nothing in the text of 28 U.S.C. § 1367(c)(3) prevents a Court from exercising supplemental jurisdiction over some, but not all, of the relevant state law claims." *Sussman-Automatic Corp. v. Schwartz*, 15 F.Supp.3d 258 (E.D.N.Y. April 25, 2014).

**{¶46}** Simply because the federal court dismissed the federal claims does not mean the federal court was unable to exercise its discretion to decide the state claims on the merits and dismiss them pursuant to motions for judgment on the pleadings, because, in this case, both the state and federal court claims arise from a common nucleus of

operative fact and there was substantial similarity between the analysis of the state and federal court claims.

**{¶47}** Appellants also argue the doctrine of res judicata is not applicable in this case because the breach of contract claim is not identical to the breach of contract claim in the federal case. We disagree. The federal magistrate reviewed the breach of contract claim contained in the federal complaint and stated the allegations contained in the breach of contract claim were as follows:

> The Contract provides that AultCare will at all times treat the enrollee with fairness and respect; that the plan will protect the enrollee from discrimination or unfair treatment based on age or evidence of insurability; that the enrollee cannot be discriminated against based on whether or not the enrollee has signed an advance directive; the enrollee has the right to receive a summary of the information about appeals and complaints filed against the plan; the enrollee will be given notice regarding an enrollee's Medicare rights within two days of admission; the enrollee has the right to file complaints regarding the quality of medical care and receive a response to a complaint; and an enrollee has a right to look at and receive copies of medical records.

**{¶48}** Each allegation made in the federal complaint is also contained in appellants' amended complaint in this case (paragraphs 265-279). Appellants' breach of contract claim was raised and decided in the federal case. When a plaintiff does not demonstrate that a material fact has changed since the issuance of the first judgment at issue, a plaintiff cannot simply allege a new legal theory in an attempt to avoid res

judicata. *State ex rel. Armatas v. Plain Twp. Bd. of Zoning Appeals*, 160 Ohio St.3d 161, 2020-Ohio-2973, 154 N.E.3d 74.

**{¶49}** Further, the Ohio Supreme Court "has not limited the application of the doctrine of res judicata to bar only subsequent actions involving the same legal theory of recovery as a previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995). A valid final judgment on the merits between the parties is "conclusive as to all claims which were or might have been litigated in the first lawsuit." *Id.* The fact that a number of different legal theories may cause liability on an action arising out of a given episode does not create multiple transactions or claims. *Id.*

**{¶50}** In the federal proceeding, the issue was whether Aultcare breached provisions (treat enrollee with fairness, protect from discrimination or unfair treatment, right to receive summary of information about complaints, notice of Medicare rights, right to look at medical records) of its Medicare Advantage Plan contract with Alexander. In this case, appellants allege that, as an enrollee in the Medicare Advantage Plan of Aultman PrimeTime, Alexander was entitled to all the benefits of the contract from Aultcare. The amended complaint alleges Aultcare breached the provisions (treat enrollee with fairness, protect from discrimination or unfair treatment, right to receive summary of information about complaints, notice of Medicare rights, right to look at medical records) of the contract by exposing Alexander and Steven to "incessant pressure and goading" so as to effectuate Alexander's withdrawal from life support; permitting Dr. Miller to verbally attack Steven on November 1, 2014; permitting Dr. Nashawati to "verbally and maliciously" attack Steven on November 21, 2014; and

permitting Dr. Boutros to attack Steven on his decision not to terminate Alexander's life. These allegations either were or could have been raised in the federal court complaint.

{¶51} Similarly, the fraud claims against the Aultman and Stjernholm Defendants are claims that were or could have been brought in the federal court case. The fraud claims asserted by appellants in this case against the Aultman Defendants center around whether Aultcare made intentionally false and misleading statements to Steven regarding the requirement that he needed to have an advance directive to be recognized as Alexander's representative, and whether the patient advocate properly looked into Steven's grievance. The allegations as to fraud in the federal case are the same, and involve whether Aultman's representatives made false or misleading statements about Steven's grievance or false and misleading statements about an advance directive. Accordingly, the claims at issue in this case arose out of the same transaction or occurrence as the claims at issue in the federal court case.

{¶52} Finally, appellants contend the application of res judicata in this case would be unfair because the Ohio Supreme Court has stated that res judicata "is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice." *Goodson v. McDonough Power Equipment, Inc.*, 2 Ohio St.3d 193, 443 N.E.2d 978 (1983). Appellants argue the application of res judicata should be applied with flexibility and application of res judicata would result in a manifest injustice in this case.

{¶53} We find no manifest injustice results from the application of res judicata in this case. Rather, the doctrine of res judicata prevents relitigation of the issues and claims already decided by the federal court. Appellants chose to refile their lawsuit in federal court, had a full and fair opportunity to present both their state and federal claims to the

federal court, and took the opportunity to vigorously and fully litigate both the state and federal claims. The federal court's judgment entry of dismissal was entered after extensive briefing and arguments by all of the parties. Further, appellants chose not to appeal the March 27th or March 30th judgments entries of the district court.

{¶54} Based on the foregoing, we find the trial court did not commit error in finding res judicata barred the fraud claim and breach of contract claim against the Aultman and Stjernholm Defendants. Appellants' first assignment of error is overruled.

III.

{¶55} For ease of discussion, we will next address appellants' third assignment of error. Appellants allege the trial court committed error by dismissing several of their claims for "additional defects." Appellants' argument consists of several sub-parts.

*Breach of Contract Claim*

{¶56} First, appellants contend the trial court committed error in dismissing their breach of contract claim against the Aultman Defendants because it was a different cause of action than alleged in federal court and thus not subject to res judicata. As discussed above, we find this argument to be not well-taken.

*Wrongful Death Claims*

{¶57} Appellants contend the trial court committed error in dismissing their wrongful death claims for several reasons: (1) Ohio's medical statute of repose does not apply to wrongful death claims; (2) the wrongful death claims were preserved under federal law; and (3) the wrongful death claim in this case is not a "medical" claim for purposes of the statute of repose.

**{¶58}** Appellants first argue that Ohio's medical statute of repose does not apply to wrongful death claims. While appellants acknowledge this Court has held that wrongful death claims are subject to the medical statute of repose in *Mercer v. Keane*, 5th Dist. Coshocton No. 20CA0013, 2021-Ohio-1576, they ask us to overturn the *Mercer* case. We decline to do so, and reaffirm our holding *Mercer* that a wrongful death action is subject to the requirements of the medical statute of repose pursuant to R.C. 2305.113(C).

**{¶59}** Appellants contend their wrongful death claims were preserved under federal law because the District Court for the Northern District of Ohio has held the statute of repose does not apply to a wrongful death action. We disagree. All parties agree, and it is clear from the recommendation of the magistrate and the judgment entry by the federal court judge, that the federal court did not consider or analyze the wrongful death claims on the merits, and returned all of the wrongful death claims to the state court. Accordingly, the trial court in this case found the wrongful death claims were not subject to res judicata, and analyzed them under state law. The wrongful death claims are governed by state law. Thus, our decision in *Mercer* is the law that governs in this case, and the Ohio Supreme Court will ultimately determine whether Ohio's medical statute of repose applies to wrongful death claims in Ohio.

**{¶60}** Finally, appellants contend the trial court improperly found a wrongful death action was not an independent action and erred in finding the wrongful death claims were "medical" claims.

**{¶61}** In *Mercer*, this Court held that while there are distinctions to be drawn between medical claims and wrongful death claims, the statute of repose applies to

wrongful death claims that arise out of the medical care, treatment, and diagnosis received. *Id.* A "medical claim" is "any claim that is asserted in any civil action against a physician * * * hospital * * * against any employee or agent of a physician * * * hospital * * * that arises out of the medical diagnosis, care, or treatment of any person." R.C. 2305.113(E)(3). Further, a "medical claim" includes "derivative claims for relief that arise from the medical diagnosis, care or treatment of a person." *Id.* Derivative claims "include, but are not limited to, claims of a parent, guardian, custodian, or spouse of an individual who was the subject of any medical diagnosis, care, or treatment * * *that seek recovery of damages for any of the following: (a) loss of society, consortium, companionship, care, assistance, attention * * * or any other intangible loss that was sustained by the parent, guardian, custodian, or spouse * * *." R.C. 2305.113(E)(7).

{¶62} Appellants make four main allegations in their wrongful death claims against both the ICU Defendants and Aultman Defendants: (1) the Defendants assumed Alexander would die very shortly anyway from his cerebral injury; (2) the Defendants supported the work and practices of Dr. Jack Kevorkian; (3) the Defendants espoused the controversial and illegitimate theory of "medical futility"; and the Defendants believed Alexander would never experience a "meaningful recovery" as the term was subjectively interpreted by them. These claims against both the ICU Defendants and the Aultman Defendants go squarely to the diagnosis, care, and treatment of Alexander, or the acts or omissions of either the ICU Defendants or the Aultman Defendants as to Alexander. The "assumption" that Alexander would die and belief that Alexander would not fully recover are "medical diagnoses." Further, the medical theories, medical practices of other doctors, and medical literature that the defendants may have relied upon arise out of the

medical care, diagnosis, or treatment rendered by the ICU and Aultman Defendants. The analysis of Alexander's condition pursuant to these alleged medical theories, and the proper medical diagnosis of Alexander, required medical expertise and professional skill. *McFarren v. Canton,* 5th Dist. Stark No. 2015 CA 00052, 2016-Ohio-484. Accordingly, we find the trial court properly determined the wrongful death claims were medical claims subject to the medical statute of repose.

*Fraud*

**{¶63}** Appellants contend the trial court committed error in dismissing the fraud claims of the ICU Defendants because they are not medical claims.

**{¶64}** This Court previously analyzed whether a fraud claim is a "medical claim" as defined in R.C. 2305.113(E) in *Rodgers v. Genesis Healthcare System, Inc.*, 5th Dist. Muskingum No. CT2015-0030, 2016-Ohio-721. While we acknowledged that, in some cases, a fraud claim may exist independent of a medical claim, we found that such fraud claims are only independent "when the decision to misstate facts cannot be characterized as medical in nature," despite the label of the cause of action. *Id.*, citing *Hensley v. Durrani*, 1st Dist. Hamilton No. C-130005, 2013-Ohio-4711.

**{¶65}** Appellants make two primary fraud allegations against the ICU Defendants: (1) Dr. Nashawati made false threats to Steven that he had to remove Alexander from life support or have him transferred to another hospital, otherwise Aultman would file a lawsuit and (2) the ICU Defendants allegedly falsified progress notes in Alexander's medical chart by omitting statements they made to Steven that Alexander would be removed from life support.

{¶66} Appellants argue that since the alleged threats were against Steven, not Alexander, they cannot be medical claims. However, despite appellants' characterization of the claims, the basic determination surrounding these allegations was whether Alexander should be removed from life support, and what steps the defendants would allegedly take in Alexander's treatment if his family chose to leave him on life support. The claims arose from discussions between Steven and the ICU Defendants about Alexander's care and treatment, the ICU Defendants' professional opinion as to whether Alexander would recover, and how to properly treat Alexander, which may have included transfer to another facility or putting someone else in place to assume Alexander's medical care. Further, what is contained, or allegedly not contained, in the doctor's progress notes is determined by a doctor's medical expertise and skill. As this Court has previously stated, a claim that medical records were not accurate fall within the definition of a "medical claim." *Rodgers v. Genesis Healthcare System, Inc.*, 5th Dist. Muskingum No. CT2015-0030, 2016-Ohio-721.

{¶67} We find the trial court did not commit error in finding the fraud claims against the ICU Defendants were medical claims. R.C. 2305.113(A) requires that all medical claims be brought within one year of their accrual. Here, appellants' claims accrued, at the latest, on December 31, 2014, when Alexander died. Appellants did not file their initial lawsuit in state court until December 28, 2016. Accordingly, appellants' fraud claims against the ICU Defendants are barred by the one-year statute of limitations.

*Intentional Infliction of Emotional Distress*

{¶68}  Appellants contend the trial court committed error in dismissing the IIED claims against the ICU and Aultman Defendants because the trial court improperly found they were medical claims subject to a one-year statute of limitations.

{¶69}  The allegations that compose appellants' IIED claims are as follows:  (1) Dr. Nashawati threatened Steven that Alexander had to be removed from life support or transferred to another hospital, and did so with intent to cause emotional distress by threatening a lawsuit; (2) Dr. Miller accused Steven of torturing his own father by keeping his father on life support, and this accusation was made immediately after that doctor conducted an examination of Alexander; (3) and another ICU doctor told Steven he "should be ashamed" to say that he was his father's son by keeping him on life support, and said "look at this man's eyes, he is dead."

{¶70}  As detailed above, the basic discussion and determination surrounding these allegations was whether Alexander should be removed from life support, and what further steps the defendants would allegedly take in Alexander's treatment.  The claims arose from discussions between Steven and the ICU Defendants about Alexander's care and treatment, and the defendants' professional opinion, utilizing their skill and expertise, as to whether Alexander would recover.  Dr. Miller's statement came immediately after examining Alexander.

{¶71}  Appellants contend the IIED claims are not medical claims because they harmed Steven, a non-patient, who was not under medical care or treatment.  However, the fact that a claim is asserted by a non-patient does not mean the claim is not a medical claim.  First, R.C. 2305.113(C) defines "medical claim" as a claim arising out of the

medical diagnosis, care, or treatment of *any person.* Further, the definition of "medical claim" contained in R.C. 2305.113(E)(3) includes "derivative claims." Steven was Alexander's representative regarding medical decisions, and his personal Medicare representative. As discussed above, it is clear that the doctors' alleged communication to Steven arose from the doctors' treatment, diagnosis, or care of Alexander. The claim for emotional distress arising from this communication is a derivative claim for relief under R.C. 2305.113(E)(7) because "the essential claim * * * is one of medical malpractice, regardless of how the claim is characterized." *Singh v. Cleveland Clinic Foundation*, 8th Dist. Cuyahoga No. 99066, 2013-Ohio-2465 (IIED claim arising from doctor's communication with family member is derivative claim for relief, and is thus a medical claim); *Butler v. Jewish Hosps., Inc.*, 1st Dist. Hamilton No. C-940119, 1995 WL 256297 (May 3, 1995) (emotional distress claim was medical claim even though the wife of the patient filed the claim, as it arose out of the treatment of her husband, the patient); *Roberts v. Luneau-Gordon*, 2nd Dist. Montgomery No. 15212, 1995 WL 703898 (Nov. 29, 1995) (parents' claim for IIED for alleged negligent treatment of minor child was derivative claim of medical malpractice claim).

{¶72} Because these allegations are assertions of medical malpractice, any emotional distress allegedly incurred as a result is necessarily a derivative claim, making it subject to the one-year statute of limitations. We find the trial court did not commit error in finding the IIED claims were medical claims. R.C. 2305.113(A) requires that all medical claims be brought within one year of their accrual. Here, appellants' claims accrued, at the latest, on December 31, 2014, when Alexander died. Appellants did not file their initial

lawsuit in state court until December 28, 2016. Accordingly, appellants' IIED claims are barred by the statute of limitations.

{¶73} Based on the foregoing, appellants' third assignment of error is overruled.

II.

{¶74} In their second assignment of error, appellants contend the trial court committed error by finding appellants could not avail themselves of 28 U.S.C. § 1367(D) or R.C. 2305.19(A) to refile their state law claims in state court.

{¶75} We first note that, pursuant to our analysis in the second assignment of error, the IIED claims and fraud claims against the ICU Defendants are "medical claims," and thus are subject to the one-year statute of limitations contained in R.C. 2305.113(A). Appellants' claims accrued, at the latest, when Alexander died on December 31, 2014. Appellants did not file their initial lawsuit in state court until December 28, 2016, past the one-year statute of limitations. Accordingly, neither the Ohio savings statute, nor 28 U.S.C. § 1367(D), operate to save these claims.

*Statute of Repose*

{¶76} As detailed above, appellants' wrongful death and survivorship claims are "medical claims" subject to the medical statute of repose contained in R.C. 2305.113(C). Alexander died on December 31, 2014. Thus, pursuant to R.C. 2305.113(C), appellants' wrongful death and survivorship claims could not be "commenced" more than four years after December 31, 2014. Appellants initially commenced their state court action on December 28, 2016, within the repose period. Appellants dismissed their claims pursuant to Civil Rule 41(A) on February 20, 2018. However, they did not refile these claims in federal court until February 15, 2019, which was after the repose period expired on

December 31, 2018. The action on these claims commenced, for purposes of the medical statute of repose, only when the claims were refiled, which was after the four-year statute of repose period had expired. Because appellants "commenced" the action after the repose period expired, these claims are barred. R.C. 2305.113(C).

**{¶77}** Appellants argue that the savings statute contained in R.C. 2305.19(A) operates to permit their claims. However, the Ohio Supreme Court has specifically addressed this issue and held that a plaintiff cannot utilize R.C. 2305.19(A) to refile their medical claims after the expiration of the statue of repose and, "unless one of the stated exceptions applies, R.C. 2305.113(C) clearly and unambiguously prohibits the commencement of any action upon a medical claim more than four years after the act or omission upon which the claim is based." *Wilson v. Durrani*, 164 Ohio St.3d 419, 2020-Ohio-6827, 173 N.E.3d 448.

**{¶78}** Appellants contend that 28 U.S.C. § 1367(d) operates to toll the medical statute of repose. However, the Ohio Supreme Court has held that the statute of repose is only subject to exceptions that are expressly incorporated into it. *Wilson v. Durrani*, 164 Ohio St.3d 419, 2020-Ohio-6827, 173 N.E.3d 448. Other than these express exceptions, the statute of repose, "provides an absolute temporal limit on a defendant's potential liability." *Id.* The only exceptions listed in R.C. 2305.113(C) are "persons within the age of minority" or "persons of unsound mind." Like the savings statute, 28 U.S.C. § 1367(d) is not expressly incorporated into R.C. 2305.113(C). Accordingly, 28 U.S.C. § 1367(d) does not operate to toll Ohio's medical statute of repose.

**{¶79}** Appellant argues the trial court improperly decided this issue utilizing state law rather than federal law. First, the cases appellants cite in support of their argument

were decided prior to the Ohio Supreme Court's decision in *Wilson.* Second, in the primary case appellants cite, *Daniel v. U.S.*, the federal court completed its analysis utilizing the "substantive laws of the state in which the alleged tort occurred." The federal court itself looked to Ohio law and cases from the Ohio Supreme Court to come to its conclusion; Ohio law has now been clarified and this specific issue has been determined by the Ohio Supreme Court in *Wilson. Daniel v. United States*, 977 F.Supp.2d 777 (N.D. Ohio 2013). Finally, federal court decisions post-*Wilson* have applied the Ohio Supreme Court's holding in *Wilson. Luse v. Durrani*, 6th Cir. No. 21-3560, 2022 WL 94609 (Jan. 10, 2022); *Atwood v. UC Health*, S.D. Ohio No. 1:16cv593, 2021 WL 2779152 (July 2, 2021) (court previously held Ohio's savings statute applied to save plaintiff's claims; however, subsequently, Supreme Court of Ohio ruled the savings statute does not save medical claims when the statute of repose applies); *Levandofsky v. Durrani*, 6th Cir. No. 20-4104, 2021 WL 5710122 (Dec. 2, 2021) (relies on Ohio law; no fraud exception to the statute of repose).

**{¶80}** Appellants additionally argue that *Wilson v. Durrani* should be applied prospectively only, and not applied retroactively to bar his claims. However, in *Wilson v. Durrani*, subsequent to the Ohio Supreme Court's decision on December 23, 2020, the appellees in that case filed a motion for reconsideration and memorandum in support, in which they asked the Ohio Supreme Court to, "exercise its discretion and apply the decision prospectively only, to cases dismissed pursuant to R.C. 2305.19(A) after December 23, 2020." In a "reconsideration entry" dated March 2, 2021, the Ohio Supreme Court stated, "the memorandum * * * in support of motion for reconsideration or, alternatively, request that [the] decision be applied prospectively only is denied." The

Ohio Supreme Court has decided the issue. This Court is bound by the doctrine of stare decisis to apply the Supreme Court's precedent. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256.

**{¶81}** We find the trial court did not commit error in finding the wrongful death and survivorship claims are barred by the statue of repose, and neither the Ohio savings statute, nor 28 U.S.C. § 1367(D), operate to save these claims.

*Statute of Limitations*

**{¶82}** As an alternative and independent reason for dismissal other than res judicata (Aultman fraud) and the statute of repose (wrongful death and survivorship), the trial court held that the wrongful death and survivorship claims against all of the defendants and the fraud claim against the Aultman Defendants were barred by the statute of limitations.

**{¶83}** With regards to the fraud claim against the Aultman Defendants, R.C. 2305.09 provides a four-year limitations period that commences when the plaintiff discovers the fraud. *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 514 N.E.2d 709 (1987). The statute of limitations expired on December 31, 2018. Appellants timely filed their fraud claims in 2016. The Ohio savings statute applied when appellants dismissed their case in 2018 and refiled in 2019 in federal court. However, when the federal court dismissed the complaint on March 31, 2020, the statute of limitations for fraud had expired; thus, appellants' filing in state court in April of 2020 was beyond the statute of limitations.

**{¶84}** Pursuant to R.C. 2125.02(D)(1), a claim for wrongful death must be brought within two years of the decedent's death. The statute of limitations expired on December

28, 2016. While appellants filed their claim on December 28, 2016, they voluntarily dismissed their case on February 20, 2018. Appellants refiled their complaint in federal court within one year. When the federal court dismissed the complaint on March 31, 2020, the statute of limitations for wrongful death had expired; thus, appellants' filing in state court in April of 2020 was beyond the statute of limitations.

{¶85} Appellants argue they are entitled to rely upon 28 U.S.C. § 1367(d) as a basis to file both their wrongful death claims against all of the defendants and the fraud claim against the Aultman Defendants. 28 U.S.C. § 1367(d) provides that, "the period of limitations * * * shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

{¶86} Both parties cite the United States Supreme Court case of *Artis v. District of Columbia* in support of their argument. 138 S.Ct. 594, 199 L.Ed.2d 473 (2018). In that case, the plaintiff filed a case in federal court with state and federal claims. *Id.* Two-and-a-half years later, the federal court ruled against the plaintiff on the federal claims and dismissed the state claims. The plaintiff refiled in state court 59 days later. The Supreme Court held that the "tolling provision" of 28 U.S.C. § 1367(d) suspends the statute of limitations both while the claim is pending in federal court and for thirty days post-dismissal. *Id.*

{¶87} However, there is an important distinction between the facts in *Artis* and the facts in this case. In *Artis*, when the plaintiff filed the complaint in federal court, two years remained on the applicable statute of limitations for the state law claims, and the statute of limitations expired while the federal court case was pending. *Id.* In this case, there is no limitations period to "toll" because the statute of limitations had already run by the time

appellants filed the federal court case. Appellants were only permitted to file their claim in federal court due to Ohio's savings statute. However, the Ohio Supreme Court has held that R.C. 2305.19(A), Ohio's savings statute, "neither operates as a statute of limitations nor operates to toll the statute of limitations." *Wilson v. Durrani*, 164 Ohio St.3d 419, 2020-Ohio-6827, 173 N.E.3d 448; *Reese v. Ohio State Univ. Hosps.*, 6 Ohio St.3d 162, 451 N.E.2d 1198 (1983) (savings statute "is not a statute of limitations. Neither is R.C. 2305.19 is a tolling statute extending the period of a statute of limitations."). 28 U.S.C. § 1367(d) operates as a stop-the-clock provision; however, in this case, there was no clock to stop. *Artis v. D.C.*, 199 L.Ed.2d 473, 138 S.Ct. 594 (2018) (rejecting the district court's reading of 28 U.S.C. § 1367(d) because it would yield the "absurdity" of a plaintiff being permitted to refile in state court even if the limitations period on their claim had expired before the plaintiff filed in federal court).

{¶88} We find the Ninth District Court of Appeals' case of *Vogel v. Northeast Ohio Media Group, L.L.C.*, instructive in this case. 9th Dist. Medina No. 19CA0003-M, 2020-Ohio-854. The plaintiff filed a state court complaint and voluntarily dismissed the case. Utilizing Ohio's savings statute, the plaintiff then filed an action against the same parties in federal court, adding federal claims to his original claims. After the district court granted judgment on the pleadings to the defendants on the federal claims, it declined to exercise jurisdiction over all of the plaintiff's state claims, and dismissed them. The plaintiff filed an action in state court thirty-days later, alleging the same state claims. The plaintiff argued he was allowed under 28 U.S.C. § 1367(d) to refile his state law claims, as it operates as a stop-the-clock provision.

**{¶89}** However, the Ninth District stated, "the problem with plaintiff's argument is that the limitations period of his libel and defamation claims had already expired by the time he filed his federal action." *Id.* The Court further held, "upon review of Section 2305.19 and 28 U.S.C. § 1367(d), we conclude that there is no language in those statutes that can be construed to allow a plaintiff who files an otherwise untimely action in federal court pursuant to Ohio's saving statute to file a new action in state court after the federal court dismisses the plaintiff's state-law claims." *Id.* The plaintiff in *Vogel* appealed to the Ohio Supreme Court, arguing the Ninth District erred in affirming the trial court's grant of summary judgment because the Ninth District's decision was contrary to 28 U.S.C. § 1367(d) and the U.S. Supreme Court's decision in *Artis.* The Ohio Supreme Court declined jurisdiction of the plaintiff's appeal in *Vogel v. Northeast Ohio Media Group, L.L.C.,* 159 Ohio St.3d 1417, 2020-Ohio-3365, 147 N.E.3d 664.

**{¶90}** We find the trial court did not commit error in finding appellants could not rely on 28 U.S.C. § 1367(d) as a basis to file the claims in this case on April 30, 2020, because the statutes of limitations for those claims expired prior to appellants' filing their complaint in federal court and thus there was no "period of limitations" for 28 U.S.C. § 1367(d) to toll during the pendency of the action. Appellants' second assignment of error is overruled.

**{¶91}** Based on the foregoing, we overrule appellants' assignments of error.

{¶92} The judgment entries of the Stark County Court of Common Pleas are affirmed.


By Gwin, J.,

Wise, Earle, P.J., and

Delaney, J., concur